JOSEPH D. STEPHANS ET UX. *v.* BOARD OF
COUNTY COMMISSIONERS OF CARROLL
COUNTY, MARYLAND

[No. 692, September Term, 1978.]

\* \* \*

MAURICE B. RIDENOUR ET AL. *v.* BOARD OF
COUNTY COMMISSIONERS OF CARROLL
COUNTY, MARYLAND

[No. 694, September Term, 1978.]

\* \* \*

AMERICAN STORES COMPANY *v.* BOARD OF
COUNTY COMMISSIONERS OF CARROLL
COUNTY, MARYLAND

[No. 695, September Term, 1978.]

*Decided February 9, 1979.*

The cause was argued before THOMPSON, MASON and COUCH, JJ.

*Charles M. Preston,* with whom were *Hoffman, Stoner & Preston* on the brief, for appellants Stephans and Ridenour. *G. Warren Mix* on the brief for appellant Stephans. *Rob Ross Hendrickson,* with whom was *J. Cookman Boyd, Jr.,* on the brief, for appellant American Stores Company.

*John C. Murphy* for appellee.

COUCH, J., delivered the opinion of the Court.

With this appeal we are, for the first time, called upon to determine what the Legislature intended when, in 1975, it repealed and reenacted, with amendments, Article 66B, § 4.08 (a) of the Annotated Code of Maryland. Prior to 1975 it was provided that in zoning and planning matters, appeals could be taken from any decision of the board of appeals or a reclassification of zoning by the local legislative body. By the 1975 legislative action, "reclassification of zoning" was deleted and "zoning action" was inserted in its place. Therein lies the genesis of this appeal. Appellants argue that the Circuit Court for Carroll County was in error in concluding that they had no right to appeal from the action of the County Commissioners of Carroll County approving and adopting a Comprehensive Mini Plan and a Zoning Ordinance Text Amendment. The trial court's ruling was based upon its determination that the actions of the County Commissioners were not "zoning actions". We agree in part with appellants and shall reverse. Our reasons follow.

The record demonstrates that in 1965 the County Commissioners of Carroll County adopted a Comprehensive

Zoning Ordinance pursuant to the authority granted it in Article 66B, Annotated Code of Maryland (1957), following a comprehensive study of present conditions and the expected growth of the county, and the adoption of a Master Plan for the county. By this Ordinance the unincorporated area of the county was divided into districts, set out specifically therein and depicted on the zoning maps of the county.[1]

In 1977 the County Commissioners received a Comprehensive "Mini" Plan for the Freedom Area and Environs from the Carroll County Planning and Zoning Commission. Following a study of the plan, and after a public hearing thereon, the County Commissioners adopted the plan with modifications. The Commissioners also adopted a Text Amendment to the Zoning Ordinance whereby a new district, "R-40,000", was created. The stated purpose of this district was

> "to provide a location for single family residential development, the individual lots of which contain a minimum of 40,000 square feet. . . . The district would generally coincide with areas designated for low density residential development on the County Master Plan."

The County Commissioners also adopted, along with the above, Rezoning Ordinance No. MA-76 which caused certain zoning maps to be amended to implement the adopted "Mini"

---

1. "Sec. 3.0. Districts established.

    For the purpose of these regulations, the unincorporated area of Carroll County is hereby divided into districts as follows:
    'C' — Conservation District.
    'A' — Agriculture District.
    'R-40,000' — Residence District. (Added 12-14-77)
    'R-20,000' — Residence, Suburban District.
    'R-10,000' — Residence, Urban District.
    'R-7,500' — Residence, Multi-Family District.
    'B-L' — Local Business District.
    'B-G' — General Business District.
    'I-R' — Restricted Industrial District.
    'I-G' — General Industrial District.
    'H' — Historic Zoning District (Added 11-12-70)
    'MHP' — Mobile Home Park District. (Added 6-25-71)"

Plan. Thereafter appellants,[2] who are alleged to be property owners in the Freedom District and environs, timely noted an appeal to the Circuit Court for Carroll County, followed by their respective petitions pursuant to Md. Rule B2 e.

Appellee, the Board of County Commissioners, demurred to the petitions stating several grounds therefor, including an allegation that there is no basis for appeal as an appeal is not authorized by § 4.08 of Art. 66B. Following a hearing on the demurrers, the trial court held the matter *sub curia* and subsequently rendered a "Memorandum Order" sustaining the demurrers as to the first two actions of the County Commissioners in adopting the "Mini Plan" and the Text Amendment. A demurrer to the third action, map amendment ordinance, which was challenged by appellants below, was sustained with leave to amend and is not before us because the trial court granted a motion for entry of final judgment upon less than all claims presented and an express determination that there was no just reason for delay. Judgment was thereafter duly entered. *See* Md. R. 605 a. With respect to the appeal from the action of the County Commissioners in adopting the "Mini Plan", the trial court sustained the demurrers because it concluded such action was not a "zoning action" and therefore no appeal would lie. So far as the appeal on the adoption of a Text Amendment to the County Zoning Ordinance is concerned, the trial court found that this was not appealable as well, stating:

> "The Text Amendment T-41 does not change a zoning classification but rather adds an additional residential district to the text of Zoning Ordinance 1E."

Again, the trial court's decision appears to be based on its conclusion that such action was not a zoning action.

### The Motion to Dismiss

Before considering the merits of this appeal, we are compelled, by reason of appellee's motion to dismiss, to decide

---

2. While Daniel S. Dulany, et al., were parties below and original appellants here, they dismissed their appeal on the day of oral argument, 1/23/79.

whether appellants had standing to participate in the proceedings below and thus have standing to maintain this appeal. Appellee argues that appellants have not shown they are aggrieved, or are taxpayers, and that even if it can be assumed they are taxpayers from their allegations of property ownership, there is no allegation that they will be affected by the adoption of the R-40,000 zoning district.

In *Clise v. Phillips Coal Co.,* 40 Md. App. 609, 392 A. 2d 1177 (1978), we said:

> "A party has standing if he is aggrieved . . . or if he is a taxpayer. Section 4.08 (a) apparently does not require that a taxpayer be aggrieved in order to maintain an appeal." 392 A. 2d at 1179-80.

We do not retreat from that holding. *See also Improvement Ass'n. v. Raine,* 220 Md. 213, 151 A. 2d 734 (1959); *Windsor Hills Imp. Ass'n. v. Balto.,* 195 Md. 383, 73 A. 2d 531 (1950); *Largo Civic Ass'n. v. Prince George's County,* 21 Md. App. 76, 80, 318 A. 2d 834 (1974).

The respective appellants have alleged in their petitions that they are property owners and appellee has not refuted these statements. We can only infer that appellants, being property owners, are also taxpayers. *See generally,* Md. Code (1957), Art. 81, § 8 *et seq.* The motion to dismiss is denied.

### Appealability

In sum the trial court held, and appellee argues here, that the action of the County Commissioners in (1) adopting the Comprehensive Mini Plan, and (2) implementing that plan by the passage of a "Text Amendment" ordinance, did not constitute either a decision of the board of appeals or a zoning action by the local legislative body and, therefore, under Art. 66B, § 4.08 (a),[3] no appeal is allowed. Obviously then, since

---

3. "*Who may appeal; procedure.* — Any person or persons, jointly or severally, aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, or any taxpayer, or any officer, department, board, bureau of the jurisdiction, may appeal the same to the circuit court of the county. Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100, Subtitle B. Nothing in this subsection shall change the existing standards for review of any zoning action."

it is undisputed that there was no board of appeals involvement in the present case, the issue comes down to what is a "zoning action" by the local legislative body.

Because the Legislature did not define "zoning action" when it substituted that phrase for "reclassification" in 1975, we must rely on the ordinary rules of statutory construction to determine what was intended. It has been said consistently for many years that the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent and, in ascertaining that intent, courts consider the language of the enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. *See generally, Bradshaw v. Prince George's County,* 284 Md. 294, 3961 A. 2d 255 (1979); *Harden v. Mass Transit Administration,* 277 Md. 399, 354 A. 2d 817 (1976); *Slate v. Zitomer,* 275 Md. 534, 341 A. 2d 789 (1975), *cert. den.,* 423 U. S. 1076; *Maryland-Nat. Capital Park and Planning Commission v. Mayor and Council of Rockville,* 272 Md. 550, 325 A. 2d 748 (1974); *Central Credit Union v. Comptroller of the Treasury,* 243 Md. 175, 220 A. 2d 568 (1966). We follow that well-settled rule.

In *Applestein v. Baltimore,* 156 Md. 40, 143 A. 666 (1928), Judge Offutt, speaking for the Court of Appeals, stated:

"The term 'zoning' has come to have a technical and artificial meaning, which is different from its literary and etymological significance. And while in its literary sense it signifies a belt or girdle more or less symmetrical in outline, it is also used to describe the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some degree to serve the interests of the whole territory affected by the plan." *Id.* at 51.

The Court of Appeals in *Huff v. Bd. of Zoning Appeals,* 214 Md. 48, 58, 133 A. 2d 83 (1956), described comprehensive zoning as "a general plan to control and direct the use of land

and buildings by dividing the governmental area into use districts according to present and planned future conditions, so as to accomplish, as far as possible, the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of the individual property owners."

Action has been defined as "the state or process of acting or doing, . . . an act or deed", The American Heritage Dictionary of the English Language. Webster's Collegiate Thesaurus, 1976, describes "action" as "something done or effected . . . act, deed, doing . . . ."

Thus we have no difficulty concluding, after viewing the wording of § 4.08 (a) of Art. 66B and giving the particular words involved here — "zoning action" — their natural and ordinary signification, the Legislature intended the phrase to encompass any act or deed of the local legislative body that controls or directs the use of land and buildings by dividing the governmental area into use districts according to present and planned future conditions. We find no ambiguity or obscurity in this language and therefore need not look elsewhere to ascertain the intent of the Legislature. *Bradshaw v. Prince George's County, supra.*

We agree with the trial judge when he concluded that the actions of the County Commissioners were not zoning actions, at least insofar as the adoption of the "Mini Plan" is concerned. However, we disagree with his conclusion that the Text Amendment was also not a zoning action. In *Washington County Taxpayers Ass'n. v. Board,* 269 Md. 454, 306 A. 2d 539 (1973), Judge Smith, speaking for the Court, stated:

> "We suspect that a part of the problem in this case may be some confusion relative to the terms planning and zoning. On this subject 101 C.J.S. *Zoning* § 4 (1958), states:
>
>> 'While "zoning" and "planning" have been considered so closely akin as to constitute a single concept, and there is a definite and harmonious relationship between them, they do not cover identical

fields of municipal endeavor, and the terms are not synonymous or interchangeable, although they are sometimes used interchangeably. They are not identical in concept, although closely related therein and there is a distinction, as well as a difference, between them, zoning being concerned primarily with the use of property.

'So, zoning may not entirely exclude planning; planning embraces zoning, in a general way, but the converse is not true, municipal "planning" being a term of broader significance than "zoning." ' *Id.* at 671-72.

*See also* E. Yokley, *Zoning Law and Practice* § 1-2 (3rd ed. 1965), and *Mansfield & Swett, Inc. v. West Orange,* 120 N.J.L. 145, 149, 198 A. 225 (1938), where it is said that planning 'connotes a systematic development contrived to promote the common interest in matters that have from the earliest times been considered as embraced within the police power,' or *State v. Ohio Power Co.,* 163 Ohio St. 451, 460, 127 N.E.2d 394 (1955), stating that planning 'embraces the systematic and orderly development of a community with particular regard for streets, parks, industrial and commercial undertakings, civic beauty and other kindred matters properly included within the police power.' " *Id.* at 455-56.

This distinction between zoning and planning has been followed in many of our sister states. *See Baker v. City of Milwaukie,* 271 Or. 500, 533 P. 2d 772, 775 (1975); *Shelton v. City of Bellevue,* 73 Wash. 2d 28, 435 P. 2d 949, 953 (1968); *Fornaby v. Feriola,* 18 A.D.2d 215, 239 N.Y.S.2d 185, 189 (1963); *Roselle v. Wright,* 21 N. J. 400, 122 A. 2d 506, 510 (N.J. 1956); *see also Goldstein v. Lincoln Park Planning Board,* 52 N.J. Super. 44, 144 A. 2d 724 (N.J. 1958).

It seems patent that in adopting the "Mini Plan" the

legislative body did nothing more than adopt a plan which, in and of itself, did nothing, nor would it do anything until it was implemented by the Zoning Ordinance Text Amendment and Zoning Map Amendment. Thus we conclude the trial court to have been correct in sustaining appellee's demurrer to the petition so far as the "Mini Plan" was concerned.

We believe the trial court erred in determining that the Text Amendment to the Zoning Ordinance was not a "zoning action". The Text Amendment, by creating a new district, "R-40,000", constituted an implementation of the Mini Plan. The action of the Commissioners in adopting the Text Amendment falls within the term "zoning action" as we believe that term was used by the Legislature.

As was the case in *Pattey v. Board of County Comm'rs.*, 271 Md. 352, 317 A. 2d 142 (1974), we conclude that, "[T]he trial judge fell into error by ignoring the basic distinction between a master plan, on the one hand, and a zoning map, comprehensive zoning, or zoning classification, on the other. . . . As we have said, a master plan is only a guide and is not to be confused with a comprehensive zoning, zoning *map,* or zoning classification . . . ." (Citations omitted). *Id.* at 360 (emphasis in original).

Thus, we hold that the adoption of the Text Amendment was an act of the Commissioners which controls or directs the use of land and buildings by dividing the governmental area into use districts according to present and planned future conditions, and was, therefore, appealable as a zoning action under Article 66B, § 4.08 (a).

> *Judgment reversed.*
> *Case remanded for further proceedings.*
> *Costs to be paid by appellee.*