599 A.2d 469

Eugenia N. GREGORY et al.

v.

BOARD OF COUNTY COMMISSIONERS OF FREDERICK COUNTY, Maryland, et al.

No. 103, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Dec. 24, 1991.

636

Marvin I. Singer, Baltimore, for appellants.

John S. Mathias, County Atty. of Frederick Maryland, for appellee, Board of County Com'rs.

William L. Fallon, Mt. Airy, on the brief, for appellee, Frall Developers, Inc.

Charles B. Frey and George T. Horman of Frederick, on the brief, for appellee, S. Robert Molesworth.

Argued before BISHOP, GARRITY and HARRELL, JJ.

HARRELL, Judge.

Appellants are residents of Frederick County who appeared before the Board of County Commissioners of Frederick County (the Board) in opposition to proposed amendment WS–88–1 (the Amendment) to the Frederick County Comprehensive Water and Sewerage Plan. The Board ultimately decided to adopt the Amendment, and appellants appealed the Board's decision to the Circuit Court for Frederick County (Dwyer, J.), which dismissed the challenge. The sole question before us is whether the Board's action in adopting the Amendment constituted a "zoning action" within the meaning of Md.Ann.Code art. 66B, § 4.08(a) (1988).[1] We hold that the Board's action did not constitute a "zoning action" within the meaning of that provision. Accordingly, we affirm the judgment of the circuit court.[2]

### Facts

On 5 December 1989 the Board considered a number of proposed amendments to the Frederick County Comprehensive Water and Sewerage Plan and adopted the Amendment that is the source of the controversy before us. The Amendment was adopted as part of Frederick County's

---

1. § 4.08(a) provides:

   Any person or persons, jointly or severally, aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, or any taxpayer, or any officer, department, board, bureau of the jurisdiction, may appeal the same to the circuit court of the county. Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100, Subtitle B. Nothing in this subsection shall change the existing standards for review of any zoning action.

2. Although we reach the same conclusion as the circuit court, we recognize that the circuit court's interpretation of § 4.08(a) enjoys no presumption of correctness on appeal to this Court. *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 446–47 n. 2, 505 A.2d 113 (1986).

ongoing responsibility under Md.Envir.Code Ann. § 9–501 *et seq.* (1987 & 1991 Supp.) to project how the County will "provide for the orderly expansion and extension" of public water supply and sewerage services within its boundaries. *Id.* at § 9–505.

The Amendment approved the establishment of a public water supply system in a newly created subregion of the New Market–Monrovia sanitary region of Frederick County. The Amendment also upgraded the water and sewerage service priority categories of two undeveloped parcels of land (the subject properties) located in the subregion—the 155 ± acre S. Robert Molesworth parcel and the 147 ± acre Frall Developers, Inc. parcel. These priority categories are assigned to different parts of the County according to when, if ever, they are expected to be served by public water supply and sewerage systems. Frederick County Comprehensive Water and Sewerage Plan ch. 1E–(1). The subject properties had formerly been assigned priority categories of W–7 and S–7, indicating that no public water supply or sewerage services were planned for them within the next twenty years. *Id.* ch. 1E–(1)(b). The Molesworth property's priority category was upgraded to W–3 and S–3, indicating that construction of public water supply and sewerage services was planned to begin within two years. *Id.* The Frall property's category was upgraded to W–5 and S–5, indicating that construction of such services was planned within the next seven to ten years. *Id.*

As the basis for their appeal of the Board's action in adopting the Amendment, appellants cited the Maryland B Rules and § 4.08(a). Appellees, the Board, Frall and Molesworth, filed motions to dismiss the appeal, challenging, *inter alia,* appellants' right to maintain an appeal of the Board's action under § 4.08(a). The circuit court granted appellees' motions to dismiss, ruling that the Board's action in adopting the Amendment was not a "zoning action" within the meaning of § 4.08(a) and that appellants, therefore, had no right of appeal from the Board's action under

the authorities they had cited.[3]  After the circuit court denied their motion to alter or amend the judgment, appellants noted a timely appeal to this Court.

## Discussion

This Court concluded in *Stephans v. Board of County Commissioners*, 41 Md.App. 494, 500, 397 A.2d 289 (1979) (*Stephans I*), *rev'd on other grounds*, 286 Md. 384, 408 A.2d 1017 (1979) (*Stephans II*), that the phrase "zoning action" in § 4.08(a) was intended to encompass only an action "that controls or directs the use of land and buildings by dividing the governmental area into use districts according to present and planned future conditions."  This interpretation corresponds with the distinction between zoning and planning recognized in Maryland and in many other states:

> [Z]oning is almost exclusively concerned with use regulation, whereas planning is a broader term and indicates the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience and welfare as may be properly embraced within the police power.

*Stephans II*, 286 Md. at 389, 408 A.2d 1017, *quoting* 1 E. Yokley, *Zoning Law and Practice*, § 1–2 (4th ed.1978).

Based on our interpretation of the phrase "zoning action," we ruled in *Stephans I*: (1) that the decision of the Carroll County Commissioners to adopt a comprehensive plan for the Freedom area of Carroll County did not constitute a "zoning action" within the meaning of § 4.08(a); and (2) that the Carroll County Commissioners' adoption of a zoning ordinance text amendment which created a new

---

**3.** The Maryland B Rules do no more than set forth procedures governing appeals to courts from administrative agencies' actions, and are, therefore, applicable only when an appeal is otherwise provided by statute. *Maryland Nat'l Capital Park & Planning v. Rockville*, 269 Md. 240, 247, 305 A.2d 122 (1973).

district for single family residential development did constitute a "zoning action" within the meaning of § 4.08(a). *Stephans I*, 41 Md.App. at 501–02, 397 A.2d 289. In *Stephans II* the Court of Appeals upheld the first holding, but reversed the second:

[W]e conclude that the right of appeal specified by the General Assembly in § 4.08(a) to one aggrieved 'by a zoning action by the local legislative body' ... refer[s] to piecemeal or 'spot' zoning, not comprehensive zoning or rezoning. Thus, the Court of Special Appeals was correct when it determined that the adoption of a 'mini' plan was not a 'zoning action' from which one might appeal, but it was incorrect when it conceived that there could be an appeal to the courts by one who objected to the enactment by a legislative body of a change in a zoning ordinance. Challenges in the courts to the adoption of comprehensive plans, zoning texts, and zoning text amendments must come in proceedings other than administrative appeals.

*Stephans II*, 286 Md. at 397, 408 A.2d 1017.

Taken together, the *Stephans* decisions set forth a distinction, which is determinative in terms of the appealability of an action under § 4.08(a), between comprehensive zoning and planning actions on the one hand and piecemeal zoning actions on the other. Planning actions are not substantially concerned with use regulation, *Stephans II*, 286 Md. at 389, 408 A.2d 1017, and are "contrived to promote the common interest in matters that have from earliest times been considered as embraced within the police power." *Stephans I*, 41 Md.App. at 501, 397 A.2d 289, *quoting Mansfield & Swett, Inc. v. West Orange*, 120 N.J.L. 145, 149, 198 A. 225 (1938). Comprehensive zoning actions *are* substantially concerned with use regulation, *Stephans II*, 286 Md. at 389, 408 A.2d 1017, but share with planning actions a broad or comprehensive land use planning basis. A legislative body's focus in such an action:

is not on a single piece of property, but rather on a considerable number of properties as they relate to each

other and to the surrounding area.... [T]hese are not adjudicative determinations affecting one property owned by one person, but instead are classically legislative determinations designed to affect local and regional needs and all property owners within the planning area.

*Montgomery Co. v. Woodward & Lothrop,* 280 Md. 686, 713, 376 A.2d 483 (1977), *cert. denied* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769 (1978) (concluding that there was no constitutional or other right to a trial-type hearing in a comprehensive rezoning action).

■■■ Neither a planning action nor a comprehensive zoning action is appealable under § 4.08(a) as a "zoning action." *Stephans II,* 286 Md. at 397, 408 A.2d 1017. Only a piecemeal zoning action, which is substantially concerned with regulation of property uses and, in contrast to a comprehensive zoning action, is narrow and restricted in focus, is appealable under § 4.08(a) as a "zoning action." *Id.*

■■■ There is no doubt as to the nature of the Board's action in the instant case in terms of the above described distinction. The Amendment was not substantially concerned with use regulation; while it changed the water supply and sewerage services priority categories of the subject properties, it had no impact, in and of itself, on the otherwise allowable uses of the properties as determined by their zoning classifications. *See Stephans I,* 41 Md.App. at 501–02, 397 A.2d 289 ("It seems patent that in adopting the [comprehensive plan] the legislative body did nothing more than adopt a plan which, in and of itself, did nothing, nor would it do anything until it was implemented by [zoning regulations].").

Despite the fact that the Board's action in the instant case was not substantially concerned with use regulation, and, therefore, cannot be deemed a "zoning" action as that term is used in the *Stephans* decisions, appellants attempt to equate the Board's action with a zoning action by arguing that its impact was inseparable from use regulation.

This argument is premised on the fact that the upgrading of the subject properties' water and sewerage services priority categories was necessary if the properties were to be developed for more intensive residential uses.[4]  It is true that there is a nexus between the water supply and sewerage planning process and the zoning process.  *See, e.g., Kanfer v. Montgomery County Council,* 35 Md.App. 715, 373 A.2d 5 (1977) (wherein availability of water supply and sewerage services impacted on individual zoning application process). This nexus, however, does not render the different processes indistinguishable.  On the contrary, the *Stephans* decisions establish that they are distinguishable, at least for the purposes of determining the appealability of a legislative body's action under § 4.08(a).

Appellants also attempt to equate the Board's action in the instant case with a piecemeal zoning action, asserting that the impact of the Board's action "was very specific and applied to only two properties."  This assertion is patently false.  The Amendment approved the establishment of a community water supply system in a subregion encompassing the subject properties but not limited to them.  Thus, the Amendment was clearly "designed to affect local and regional needs and all property owners within the planning area."  *Woodward & Lothrop,* 280 Md. at 713, 376 A.2d 483.

---

4.  Before actual public water supply or sewerage services may be extended to a proposed development, the property on which that development is proposed must, among other things, have at least a water classification of W–4, W–3, W–2 or W–1 or a sewer classification of S–4, S–3, S–2 or S–1.  Frederick County Comprehensive Water and Sewerage Plan ch. 1D.  Final zoning of the property, that is, the attainment of a zoning classification in which the proposed development is permitted, must also be achieved.  *Id.*  The Board's adoption of the Amendment made the Molesworth property eligible for extension of actual public water supply and sewerage services, as final zoning of that property had already been achieved.  In contrast, the Frall property was not eligible for such an extension even after the adoption of the Amendment, as its final zoning had not been accomplished.  Nor could the Frall property obtain a more advanced priority category than S–5 and W–5 without first receiving a zoning reclassification other than the Agricultural one it was then assigned.  *Id.*

Moreover, the Board's decisionmaking process in adopting the Amendment focused "on a considerable number of properties as they relate to each other and to the surrounding area." *Id.* Existing water supply and sewerage conditions in an area far exceeding the 302 ± acres encompassed by the subject properties were studied in an effort to determine whether environmental health conditions in that area justified extension of community services to the subregion proposed by the Amendment. The study area included the developed subdivisions of Mill Bottom, Rolling Hills, Skyline Manor, and Park Lake Estates, as well as developed lots along Bill Moxley Road, Penn Shop Road, and Mill Bottom Road containing some 386 existing homes. The functional relationship between the proposed subregion and adjoining areas such as the Town of Mt. Airy and northern Montgomery County was also given consideration, along with the impact of the proposed Amendment on the Monocacy River and its tributaries. Thus, the Board's action in the instant case clearly had a broad or comprehensive planning basis, and as such it cannot be equated with a piecemeal zoning action.

Indeed, we are unable to conceive of a situation in which the adoption of an amendment to a county's comprehensive water and sewerage plan would lack such a comprehensive basis. As we stated earlier, the purpose of such plans is to have each county in the State project how it will "provide for the orderly expansion and extension" of public water supply and sewerage systems within its boundaries. Md.Envir.Code Ann. § 9–505. Thus, a county's comprehensive water and sewerage plan has, by definition, a broad or comprehensive land use planning basis in "the systematic and orderly development of a community." *Stephans I*, 41 Md.App. at 501, 397 A.2d 289, *quoting State v. Ohio Power Co.*, 163 Ohio St. 451, 460, 127 N.E.2d 394 (1955). The adoption of amendments to a plan is part of each county's responsibility to revisit its plan periodically. Md.Envir.Code Ann. § 9–505. Consequently, the adoption of a particular

amendment to the plan cannot be isolated from the context of the plan as a whole.

We conclude that the Board's adoption of the Amendment to the Frederick County Comprehensive Water and Sewerage Plan was in the nature of a "planning" action as that term is used in the *Stephans* decisions. Therefore, the Board's action was not a "zoning action" within the meaning of § 4.08(a) and was not appealable under that provision. Accordingly, we affirm the judgment of the circuit court.[5]

JUDGMENT AFFIRMED; APPELLANTS TO PAY COSTS.

---

**5.** Having addressed the only question presented in this appeal, we are not bound to advise appellants as to the appropriate means of obtaining judicial relief. We direct appellants' attention, however, to *Carusillo v. Prince George's County*, 289 Md. 436, 424 A.2d 1106 (1981).