652 A.2d 1197

The FRIENDS OF MOUNT AVENTINE, INC., et al.

v.

David A. CARROLL, et al.

No. 613, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 3, 1995.

Herbert Jordan (Jordan & Walster, Roxbury, NY, and Thomas McCarthy, Jr., Annapolis, on the brief), for appellants.

Roger Lee Fink, La Plata, for appellee County Com'rs of Charles County.

Diane O. Leasure (Mary A. Liano and Fossett & Brugger, Chartered, on the brief), Greenbelt, for appellee Banyan.

M. Rosewin Sweeney, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief, for appellee Carroll, and Shelley S. Wasserman, Asst. Atty. Gen., on the brief for appellee Kreitner).

Argued before WENNER, CATHELL and MURPHY, JJ.

WENNER, Judge.

Appellants, Friends of Mount Aventine, Inc., (FOMA), Alexander M. Winter, Bonnie Bick, John J. Myles, Sr., and Harold Von Braunhut, appeal from an order of the Circuit Court for Anne Arundel County granting appellees' motion to dismiss appellants' complaint. On appeal, appellants ask but two questions, which we have restated as follows:

I. Did the trial court err in dismissing plaintiff, Friends of Mount Aventine, Inc., for lack of standing?

II. Did the trial court err in dismissing appellants' complaint on the ground that it was not ripe for adjudication?

For the reasons discussed fully below, we shall answer both questions in the negative and affirm the judgment of the circuit court.

## Facts

This dispute centers on a parcel of real estate in Charles County known as Chapman's Landing, owned by Banyan Management Corporation ("Banyan"). Chapman's Landing extends for approximately two miles along the shoreline of the Potomac River, and inland for approximately 1,000 feet.

In 1992, as a result of a comprehensive rezoning of Charles County, Chapman's Landing was designated as low density residential.[1] In March 1992, the County Commissioners of Charles County (the "County") amended the County's Water and Sewerage Plan. Two amendments of the Plan affected Chapman's Landing.[2] The first awarded Chapman's Landing an S–5 sewer service priority, making an extension of sewer service possible within six to ten years. The second extended the County's Mattawoman Sewer Service Area.[3] Pursuant to Md.Code (1982, 1993 Repl.Vol.), § 9–507 of the Environment Article, the County submitted both amendments to the Maryland Department of the Environment ("MDE") for approval.

MDE first referred the amendments to the Maryland Office of Planning ("MOP"), to determine whether they were consistent with the County's comprehensive water and sewerage plan. After receiving further information, MOP approved the amendments, as did MDE. Appellants then filed a complaint in the Circuit Court for Anne Arundel County, seeking a

---

1. Friends of Mount Aventine, Inc. unsuccessfully challenged this zoning designation.

2. Other properties affected by the amendments included the "Heriot Property" and the "Scamoni Property."

3. This amendment is not before us in this appeal.

declaratory judgment and to enjoin the amendments. Appellees responded with a motion to dismiss. After dismissing FOMA and Winter from the suit for lack of standing, Judge Goudy granted appellees' motion to dismiss because appellants' claim was not ripe for adjudication. This appeal followed.

## Discussion

### I.

### A.

We begin by noting that we are not obligated to determine whether FOMA had standing under the Maryland Environmental Standing Act (MESA), Md.Code (1974, 1989 Repl.Vol.) § 1–501 *et seq.* of the Natural Resources Article, because the standing of appellants Myles and Von Braunhut has not been challenged. In *Montgomery County v. Board of Supervisors of Elections,* 311 Md. 512, 516 n. 3, 536 A.2d 641 (1988), the Court of Appeals noted that, as one of the plaintiffs had standing to bring the suit, it was not necessary for the Court to reach the merits of the circuit court's ruling dismissing another. *See Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Authority,* 323 Md. 641, 650 n. 6, 594 A.2d 1115 (1991); *State's Attorney v. Mayor & City Council of Baltimore,* 274 Md. 597, 602, 337 A.2d 92 (1975).

### B.

■ While we need not reach the merits of FOMA's standing claim, we nonetheless do so and hold that the trial court did not err in concluding that MESA did not confer standing on FOMA.[4]

MESA § 1–503 provides in relevant part that

"[a]ny ... person, regardless of whether he possesses a special interest different from that possessed generally by

---

4. Since appellants do not contend that FOMA had standing to sue under common law principles, we need not reach that issue here.

the residents of Maryland, or whether substantial personal or property damage to him is threatened[,] ... may bring and maintain an action for mandamus or equitable relief, including declaratory relief against any officer or agency of the State ... for failure ... to perform a *nondiscretionary ministerial duty* imposed upon them under an environmental statute, ordinance, rule, regulation, or order[.]

According to appellants, MDE and MOP had a "duty under the Environmental Article to ensure consistency between the county's water and sewerage plan and its comprehensive planning (including critical area program)." Accordingly, appellants conclude that MESA confers standing on FOMA. We disagree.

We begin by noting that appellants place undue emphasis on *Maryland Waste Coalition v. Maryland Dep't of the Environment*, 84 Md.App. 544, 581 A.2d 60 (1990). We remanded *Maryland Waste* to the circuit court for further proceedings. Nevertheless, we were reversed by the Court of Appeals in *Medical Waste Assocs. v. Maryland Waste Coalition, Inc.*, 327 Md. 596, 622, 612 A.2d 241 (1992). In *Medical Waste*, the Court of Appeals looked to both the language and legislative history of MESA and "h[e]ld that MESA does not ordinarily grant organizations ... standing to participate in judicial review of an administrative decision."

Consequently, we must ascertain whether MDE's approval of the proposed amendments to the water and sewerage plan constituted a discretionary administrative decision. In *Holmes v. Maryland Reclamation Assocs., Inc.*, 90 Md.App. 120, 150–151, 600 A.2d 864, *cert. dismissed*, 328 Md. 229, 614 A.2d 78 (1992), we emphasized the discretionary nature of MDE's review of proposed amendments under Md.Code (1982, 1993 Repl.Vol.), § 9–507(a) of the Environment Article,[5] and

---

5. Section 9–507 provides in relevant part that:

When a county governing body submits its proposed county plan or a proposed revision or amendment of its county plan to [MDE], the Department may:

(1) Approve the proposal;

said that "MDE may reject a county's proposed plan or plan revision, or it may '[m]odify or take other appropriate action on the proposal' " (quoting § 9–507(a)). In *Holmes*, we took note of "MDE's strong control over county plans, *including its ability to modify or veto plans or amendments of which it does not approve.*"[6] *Id.* at 151, 600 A.2d 864. (Emphasis added.)

Consequently, we hold that where, as here, an agency is free to reject, approve, modify, or take any "appropriate action" with respect to proposed amendments *to a county* waste and sewerage plan, that agency is making a discretionary administrative decision. Thus, MESA is inapplicable and the trial court did not err in dismissing FOMA for lack of standing.

## II.

 Appellants also contend that Judge Goudy erred in dismissing their complaint for lack of ripeness. Both this court and the Court of Appeals have held that "the existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action." *Hatt v. Anderson*, 297 Md. 42, 45, 464 A.2d 1076 (1983); *Anne Arundel County v. Ebersberger*, 62 Md.App. 360, 367–368, 489 A.2d 96 (1985). In determining whether justiciability exists, " 'ripeness' . . . may be involved." *Ebersberger, supra* at 368, 489 A.2d 96. "Generally, an action for declaratory relief lacks ripeness if it involves a request that the court declare the rights of parties upon a state of facts which has not yet arisen, [or] upon a matter which is future, contingent and uncertain."

---

 (2) Disapprove the proposal;

 (3) If the part approved includes all of the required elements of a county plan, approve the proposal in part and disapprove it in part; or

 (4) Modify or take other appropriate action on the proposal.

**6.** While § 9–507 also requires MDE to submit any proposed amendments to MOP "for *advice* on the consistency of the proposal with the local master plan and other appropriate matters" (emphasis added), we find that any decision by MDE to heed that advice would be clearly discretionary.

*Boyds Civic Ass'n v. Montgomery County Council,* 309 Md. 683, 690, 526 A.2d 598 (1987). In reviewing Judge Goudy's dismissal for lack of a justiciable controversy, "we limit our consideration . . . to allegations of fact and the inferences deducible from them" and "[i]f any material facts alleged in [appellants'] complaint tend to support [appellants'] right to recover, the order to dismiss must be reversed." *Lee v. Denro, Inc.,* 91 Md.App. 822, 828, 605 A.2d 1017 (1992).

## A.

As appellants see it, this matter is ripe for adjudication because "the Chapman's Landing Development is beyond the stage of speculation or remoteness." In support of their position appellants urge—without citation to any controlling authority—that "Chapman's Landing is a specific proposal by a specific developer for a specific area." Looking for a legal thread upon which to hang appellants' conclusory statement, we turn to *Gregory v. Board of County Comm'rs,* 89 Md.App. 635, 642, 599 A.2d 469 (1991). In *Gregory,* appellants similarly asserted that "the impact of [a county] Board's action 'was very specific and applied to [specific] properties' " and thus constituted a "piecemeal zoning action" ripe for appeal under Md.Code (1957, 1988 Repl.Vol.), Art. 66B § 4.08(a).[7] *Id.* In the case at hand, unlike in *Gregory,* appellants seek *declaratory* relief. As a result, *Gregory* is of no help to appellants and their contention must fail.[8]

## B.

In a similar vein, appellants contend that the challenged amendments are "an essential prerequisite to the entire shore-

---

7. Revised as Maryland Rule 7–201 *et seq.*

8. Appellants' reliance on *Carusillo v. Prince George's County,* 289 Md. 436, 424 A.2d 1106 (1981), is equally misplaced. In *Carusillo,* the Court of Appeals held that appellants' appeal of a county board's denial of a particular water and sewerage amendment affecting appellants' property had been improperly dismissed for appellants' failure to exhaust administrative remedies. As the issue of ripeness was not raised, *Carusillo* is inapposite.

line development, which cannot occur without sewerage service." We fail to grasp appellants' point. In the case at hand, the S–5 water and sewerage service priority applies to "[a]reas which are located within a central service area *but are not yet approved for central service* [and thus s]ervice is *possible* within 6 to 10 years, *but not guaranteed.*" We point out to appellants that we said in *Ebersberger, supra* 62 Md.App. at 371, 489 A.2d 96, that such amendments "do[ ] not *require* the [county to permit residential development at a certain level but] merely *authorize[ ]* such [development]." (Emphasis in original).

In the instant case, designating Chapman's Landing as S–5 merely means that water and sewerage service are a future possibility. While we agree with appellants that the amendments may "enable the project [appellants] oppose," the challenged amendments do not *ensure* that the Chapman's Landing project will ensue. Moreover, appellants concede that, in order to proceed with the Chapman's Landing project, it would be necessary for appellees to clear the significant procedural hurdle of securing growth allocation. As Judge Goudy put it, "these land use [amendments] do not necessarily lead to residential development." We agree. There was no error.

## C.

Finally, appellants contend that *Boyds Civic Ass'n v. Montgomery County Council,* 309 Md. 683, 526 A.2d 598 (1987), is dispositive. In *Boyds,* property owners filed a complaint against the Montgomery County Planning Board after the Board had amended the Boyds Master Plan to designate certain areas as a Mineral Resource Recovery Zone, permitting stone quarrying. The Court of Appeals said in *Boyds* that, where "[t]he threat of . . . potential rezoning . . . hangs like a pall of smoke over . . . [neighboring] properties 'within sight and sound' of . . . land sought to be quarried[,] a justiciable controversy exists. . . ." *Id.* at 700, 526 A.2d 598.

Nevertheless, *Boyds* is distinguishable in several respects. First, the amendments at issue here, as we have said, were "clearly 'designed to affect *local and regional needs* and *all property owners within the planning area.* ' " *Gregory, supra* 89 Md.App. at 642, 599 A.2d 469 (emphasis added). Moreover, the *rezoning* of Chapman's Landing is not before us, and appellants concede that appellees "cannot develop [Chapman's Landing] to a greater intensity than one home per twenty acres without clearing the procedural hurdle of securing growth allocation." [9]

Appellants also contend that "construction pursuant to the amendments challenged here appears less contingent and uncertain than quarrying in *Boyds* . . . [both because] amendment 89A–C resulted in an 'action plan to be implemented as rapidly as possible' " and "[t]he plan provides that the county and the developer should make '[e]very effort . . . to expedite water and sewer projects.' " We are not persuaded. As we noted in *JMC Constr. Corp. v. Montgomery County:*

> Such land use planning documents [as a master plan] represent only a basic scheme generally outlining planning and zoning objectives in an extensive area, and are in no sense a final plan; they are continually subject to modification in the light of actual land use development and serve as a guide rather than a strait jacket.

54 Md.App. 1, 12, 456 A.2d 931 (1983) (quoting *Montgomery County v. Woodward & Lothrop,* 280 Md. 686, 703–704, 376 A.2d 483 (1977)). In *Boyds,* the Court of Appeals determined that, while the adjacent property owners contesting the procedures leading to the designation of land adjacent to them on the Boyds Master Plan as suitable for a Mineral Discovery Zone "presented an issue cognizable in a declaratory judgment action[,] . . . the adoption of an amendment to the master plan

---

9. While appellants also contend that they are "committed to preservation of the property as it is, and oppose *any* development of the property, including *any* sewer extension," we reject appellants' contention, as the zoning issue is not before us. *See supra* note 3.

... [was] not a contested case within the meaning of the Administrative Procedure Act...."

In contrast to *Boyds,* the amendments challenged here were not "initiated, approved, and adopted in furtherance of an actual, pending application to amend the local zoning map." *Boyds, supra* 309 Md. at 697, 526 A.2d 598. Rather, "the challenged [amendments] could have no injurious effect upon the plaintiffs until the prospect of [their] implementation," through approval of growth allocation [10] of the subject property, became " 'substantially more certain.' " *Id.* (quoting *Ebersberger, supra* 62 Md.App. at 371, 489 A.2d at 96).

While appellants correctly note that the *Boyds* Court looked to Maryland Code (1974), § 3–402 of the Cts. & Jud.Proc. Article for the proposition that "the Maryland version of the Uniform Declaratory Judgments Act ... is remedial ... [and] shall be liberally construed and administered," *Boyds, supra* at 688, 526 A.2d 598, the *Boyds* Court also said that "the existence or nonexistence of ripeness is a question of degree" and a court must be "satisfied that the 'ripening seeds' of an actual controversy exist...." *Id.* at 691, 526 A.2d 598 (emphasis added).

We hold that Judge Goudy did not err in concluding that appellants had planted no " 'ripening seeds' of an actual controversy.' "

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

**10.** Such approval is conditioned upon meeting specific guidelines on location, the design of development projects, and maximum permitted densities.