REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

CONSOLIDATED CASES

No. 821
September Term, 2012

---

MICHAEL F. DUGAN, ET AL.
v.
PRINCE GEORGE'S COUNTY, MARYLAND
ET AL.

---

No. 455
September Term, 2013

---

MICHAEL F. DUGAN, ET AL.
v.
PRINCE GEORGE'S COUNTY, MARYLAND
ET AL.

---

Matricciani,
Kehoe,
Berger,

JJ.

---

Opinion by Matricciani, J.

---

Filed: March 27, 2014

This appeal centers around two resolutions approved by the Prince George's County Council ("the Council"). Both resolutions involve an application made by Reaching Hearts International ("RHI") on August 13, 2010[1] for a water and sewer amendment for development of property at 6100 Brooklyn Bridge Rd. in Laurel, Maryland. RHI's application was partially approved by the Council on September 13, 2011, and the remainder of the application was approved on January 24, 2012. The Maryland Department of the Environment ("MDE") approved the amendments on August 17, 2012.

Appellants, who are homeowners bordering the property in question, timely filed several appeals. The appeals include the following: three petitions for judicial review (for the Council's first resolution (case CAL 11–25989), for the Council's second resolution, and in the alternative, a writ of administrative mandamus (case CAL 12-03856), and for MDE's approval (case CAL 12-27009)); and two declaratory judgments and petitions for writ of mandamus (for the Council's first and second resolution (case CAL 11-36987) and for MDE's approval (case CAL 12-29029)).

In June 2012, the court granted the appellees' motion to dismiss a declaratory judgment action for the Council's resolutions (CAL 11-36987) on the grounds that the

_____

[1] The history of RHI's water and sewer amendment applications date back to 2003, but this specific appeal stems from the approval of the 2010 application. The history is more fully described later in the opinion.

resolutions were quasi-judicial.[2]  Appellants appealed this dismissal.  The court then

consolidated all of the remaining cases on the issue, and upheld the Council's resolutions

and MDE's approval.  Appellants timely appealed to this court on all of the judgments,

except the petition for judicial review of the MDE decision. [3]

## QUESTIONS PRESENTED

Appellants present several questions for our review, which we rephrase and

combine below:

> I. Whether the circuit court erred when it found that the Council's
> amendments to the water and sewer plan for RHI's land were quasi-judicial
> (CAL 11-36987)?
>
> > a.  If quasi-judicial, whether the Council's resolutions fail to articulate
> > the basis of the Council's decision at a level sufficient for judicial
> > review of the legality of the decisions (CAL 12-03856)?
> >
> > b.  If quasi-judicial, whether the administrative record fails to include
> > substantial evidence supporting the Council's resolutions to amend the
> > water and sewer plan (CAL 12-03856)?
> >
> > c.  If quasi-judicial, whether the Council lacked legal authority to
> > consider RHI's application for a water and sewer amendment because
> > Prince George's County failed to first certify that the proposed
> > amendment conformed to its 2008[4] General Plan (CAL 12-03856)?

---

[2]  If the Council was acting in a quasi-judicial capacity, the appropriate vehicle for appealing the Council's resolutions is administrative mandamus.  *Bethel World Outreach Church v. Montgomery Cnty.*, 184 Md. App. 572, 596-97 (2009).

[3] Appellants simultaneously petitioned the Court of Appeals for a writ of certiorari, which was denied.

[4] Appellants' question actually asked about the 2002 General Plan, but based on

(continued...)

II. Whether the MDE acted outside its legal boundaries when it approved the Council's amendments to the water and sewer plan for RHI's land (CAL 12-29029)?

For the reasons that follow, we answer no to all of the questions and affirm.

**FACTUAL AND PROCEDURAL HISTORY**

There has been a lengthy litigation history associated with this case. Although a $3.7 million jury verdict[5] is generally strong enough to put an issue to rest, appellants remain undeterred; they continue to litigate this case to prevent RHI from developing land under the false pretext of environmentalism. Perhaps, this decision will finally allow RHI to move forward.

Before delving into the details of the case, it is necessary to provide some background information on the law regarding water and sewer systems. Maryland Code (1983, 2007 Repl.Vol.), § 9–503 of the Environment Article ("EA") requires Maryland counties to develop 10–year plans addressing, among other things, water supply systems and sewerage systems. The statute requires that county plans "[p]rovide for the orderly expansion and extension of [water supply and sewerage systems] in a manner consistent with all county and local comprehensive plans." EA § 9–505(a)(1); *see also* Code of Maryland Regulations ("COMAR") 26.03.01.02. Accordingly, each plan must establish

---

[4] (...continued)
their overall argument, we believe they intended to refer to the 2008 General Plan.

[5] As explained, *infra*, RHI obtained this money judgment in a federal court action in 2008.

category designations indicating the status of community water and sewer service in each area of the county.  COMAR 26.03.01.04.

Prince George's County is a home-rule county which adopted a charter form of government in 1970. The County is authorized to exercise the powers set forth in Article 25A of the Maryland Annotated Code. The County delegates to the Council the responsibility to approve water and sewer category changes.  In Prince George's County, if one wants to change a sewer and water category from 5 to 4,[6] it must be accomplished through a legislative amendment process.  Prince George's Water and Sewer Plan 2-5 (2008).  During this process, the applicant submits a proposed amendment to the County's Department of Environmental Resources (DER) during one of three annual amendment cycles.  Prince George's Water and Sewer Plan 6-2 (2008).  DER then submits the proposed amendment to the County Executive, who in turn submits it to the Council with a recommendation.  *Id*.  The Council votes on the amendment after holding a public hearing.  *Id*.  If the Council amends the plan, MDE must approve the amendment. Maryland Code (1983, 2007 Repl.Vol.), § 9–503(a),(c) of the Environment Article.

In 2002, RHI, a Seventh Day Adventist affiliated congregation, purchased approximately 17 acres (7 acres in the front parcel and 10 acres in the rear parcel) of unimproved property in Laurel, Maryland with the intent to construct a church and a school.  Prior to purchase of this land, Prince George's County ("the County") had

---

[6] This is the desired change at issue in this case.

assigned approximately 13.6 acres[7] of the property (half of the front parcel[8] and the entirety of the back parcel) a water and sewer category 5, which prohibits development until adequate public facilities are available to serve the proposed development. On March 31, 2003, RHI applied to change the water and sewer category to 4 for the 13.6 acres to allow for development.

Despite DER's and the County Executive's favorable recommendations, the Council denied the change in category. The Council gave three reasons for denying the category change: 1) the proposed church building was adjacent to the Washington Suburban Sanitary Commission (WSSC) Reservoir[9], 2) the project was out of character with the surrounding lot (residential) development, 3) and impervious surfaces at the building site could have a negative impact on the water quality of the adjacent reservoir. At the same time, the Council approved Dugan's Addition to Meromy Estates, a residential development of five single-family homes, that was located on the same road as RHI's property and adjacent to the WSSC property. RHI then filed a mandamus action in state court challenging the Council's denial of its application. The Circuit Court for Prince George's County upheld the Council's rationale for denying RHI's application, we affirmed, and the Court of Appeals denied RHI's petition for a writ of certiorari.

---

[7] The parties differ as to whether the acreage is 13.6 or 13.7 acres.

[8] The rest of the front parcel was designated as category 3.

[9] This is also referred to as the Rocky Gorge Reservoir.

While the mandamus action was being litigated, RHI revised its plan to build only on the front parcel of the land. On November 25, 2003, the Council passed a resolution, CB-83-2003, that had the effect of preventing RHI from building on the front parcel of the land.[10] On November 4, 2004, RHI filed a subdivision application to combine the front and real parcels of its property in order to comply with CB-83-2003 by developing only 10 percent of the lot. The Planning Board for Prince George's County denied RHI's subdivision application on April 7, 2005 because the Board said that the land in water and sewer category 5 could not be counted towards the overall lot coverage. As a result, RHI exceeded the 10 percent threshold set by CB-83-2003. RHI appealed, but the circuit court and this court affirmed the Planning Board's decision. The Court of Appeals again denied RHI's petition for a writ of certiorari. While appealing the Planning Board's decision, RHI filed a second application to change its water and sewer category for 13.6 acres of its land, and was denied again by the Council for the same reasons as in 2003.

In 2006, RHI filed suit in federal court alleging religious discrimination and Religious Land Use and Institutionalized Persons Act violations against the County and the Council.[11] In April 2008, a jury found that the County's actions were motivated by

_____

[10] The resolution reduced the permitted lot coverage of any non-residential building within 2,500 feet of a drinking water reservoir from 50-60 percent to no more than 10 percent. Lot coverage refers to all impervious surfaces that are covered and would include buildings, parking spaces, and roads. Not coincidentally, this resolution was championed by the Council's most vocal opponent to RHI's development.

[11] *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766 (D.
(continued...)

religious discrimination, and had imposed a substantial burden on RHI's exercise of religion. The jury awarded damages for $3,714,822.36, and the federal court ordered the Council to process any future water and sewer category change applications by RHI without further delay and without religious discrimination. The federal court also declared CB-83-2003 unconstitutional as applied to RHI. The County appealed, and the U.S. Court of Appeals for the Fourth Circuit affirmed.[12]

On August 13, 2010, RHI applied to change its 13.6 acres of property to water and sewer category 4, and the Council again rejected the application for the same reasons given for the earlier denials. In July 2011, RHI filed a motion for contempt against the Council in federal court. The U.S. District Court directed the Council to show cause why its members should not be held in contempt and sanctioned for violating its 2008 order. At the urging of the County Executive, in September 2011, the Council reconsidered its denial of RHI's amendment to the water and sewer category, but only for the front 3.6 acres of RHI's property. The federal court then directed supplemental briefing concerning whether the Council's partial approval of RHI's application conformed with its earlier orders. After holding a hearing on the contempt motion, the U.S. District Court entered an order vacating the part of the Council's resolution that denied a portion of

_____

[11] (...continued)
Md. 2008) aff'd, 368 F. App'x 370 (4th Cir. 2010).

[12] *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766 (D. Md. 2008) aff'd, 368 F. App'x 370 (4th Cir. 2010).

RHI's application. It remanded the matter to the Council to reconsider its partial denial, and to process the application without delay or religious discrimination. In January 2012, the Council approved RHI's water and sewer amendment for the remainder of the property. In its resolution approving RHI's water and sewer category change, the Council cited the federal court's opinion and order. MDE then approved the Council's resolution changing the water and sewer category.

As stated above, appellants filed several timely appeals challenging the Council's approval of amendments to the water and sewer category for 3.6 acres of RHI's land as well as the remaining 10 acres, and challenging MDE's approval of the amendments. The circuit court consolidated the cases, and affirmed the Council's and MDE's approval of amendments to the water and sewer category. Appellants appealed the circuit court decision to both this court and the Court of Appeals. As noted above, the Court of Appeals denied certiorari.

## DISCUSSION

## I.

Appellants first argue that the circuit court erred in finding that the Council's amendments to the water and sewer plan for RHI's land were quasi-judicial, instead of quasi-legislative. Appellants maintain that because the amendments to the water and sewer plan were quasi-legislative, the court wrongly dismissed their declaratory judgment

action.[13]  We review the trial court's legal conclusions *de novo.  Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 72 (2004).

In determining whether the Council's action was quasi-judicial or quasi-legislative, we look to "the nature of the particular act in which it [the Council] is engaged" and "whether the decision itself is made on individual or general grounds." *Bucktail, LLC v. Cnty Council of Talbot Cnty*, 352 Md. 530, 545 (1999).  A recent Court of Appeals decision further clarified this determination stating that "the greater a decisionmaker's [sic] reliance on general, 'legislative facts,' the more likely it is that an action is legislative in nature.  Likewise, the greater a decision-maker's reliance on property-specific, 'adjudicative facts,' the more reasonable it is to term the action adjudicatory in nature." *Talbot Cnty. v. Miles Point Prop*., *LLC*, 415 Md. 372, 387 (2010).

Although the general process of considering water and sewer category change requests in Prince George's County is a legislative amendment process, the consideration of RHI's application was unique.  When partial approval was granted in September 2011, the application was not combined with any other water and sewer category change

---

[13] A declaratory judgment action is appropriate when there is no judicial review by statute and the action was quasi-legislative in nature, while an administrative mandamus action is appropriate when there is no judicial review provided by the statute and the action was quasi-judicial in nature. *See Bethel World Outreach Church v. Montgomery Cnty*., 184 Md. App. 572, 596-97 (2009) (explaining the distinction between a declaratory judgment action and an administrative mandamus action).

requests, but was reviewed separately. Moreover, the approval was not based on the overall community planning, but rather a specific federal court opinion and order concerning discrimination against RHI's application.[14] In fact, the Council had already addressed any potential community planning issues when it approved the same type of amendment for a similarly situated development in 2003.[15]

While appellants point to the cases of *Bethel Worldwide Outreach Church v. Montgomery Cnty.*, 184 Md. App. 572, 589 (2009), *Appleton Reg'l Cmty. Alliance v. Cnty. Comm'rs of Cecil Cnty.*, 404 Md. 92 (2008), and *Gregory v. Board of County Comm'rs of Frederick Cnty.*, 89 Md. App. 635 (1991), to show that water and sewer amendments are quasi-legislative in nature, the facts of this case are distinguishable. *Bethel*, *Appleton,* and *Gregory* involved water and sewer category change requests that had a broad planning basis in mind. *See Bethel World Outreach Church v. Montgomery Cnty*., 184 Md. App. 572, 592 (2009) (stating that the "category change request was bound up in broader policy considerations nearly from the time it was submitted"); *Appleton Reg'l Cmty. Alliance v. Cnty. Comm'rs of Cecil Cnty*., 404 Md. 92, 104 (2008) (stating that if the proposed amendment was effective, there would be "an effect beyond the specific parcels proposed to be changed"); and *Gregory v. Bd. of Cnty. Comm'rs of*

---

[14] The resolutions were considered at that time in order for the Council and County to avoid being held in contempt by the federal court.

[15] This property, Dugan's Addition to Meromy Estates, is a residential development of five single-family homes that is on the same road as RHI's property and has the same close proximity to the WSSC reservoir.

*Frederick Cnty*., 89 Md. App. 635, 643 (1991) (stating that the "decisionmaking (sic) process in adopting the Amendment focused on a considerable number of properties as they relate to each other and to the surrounding area").

As explained above, the application for RHI was reviewed outside of the normal planning process and constitutes an exception to the general rule. Indeed, *Bethel Worldwide Outreach Church* left open the possibility that a water and sewer amendment could be narrowly focused and not quasi-legislative. It stated that "we are not holding that all actions by the Council amending the water and sewer plan, even when the nature of the amendment is not subject to the administrative delegation process, are necessarily legislative. We hold that the action, in this instance, was legislative." 184 Md. App. 572, 596 (2009). Thus, it is permissible to identify situations where amending the water and sewer plan is a quasi-judicial action, and that is the case here. In our view, the circuit court did not err in finding that the approval of the Council's amendments were quasi-judicial or in dismissing the declaratory judgment count.

Having affirmed the circuit court's conclusion that the Council acted in a quasi-judicial capacity when it approved amendments to the water and sewer plan, we now turn to appellant's arguments on the legitimacy of the Council's resolution. Appellants contend that the Council's resolutions failed to articulate the basis of the Council's decision at a level sufficient for judicial review of the legality of the decision. We disagree.

An agency or governing body's decision must state the findings of facts on all material issues, conclusions of law, and the rationale of the decision. *Forman v. MVA*, 332 Md. 201, 220-21 (1993). While it is true that the Council's resolutions did not include a discussion of how a category change conforms to each of the requirements of the County's 2008 Water and Sewer Plan, the Council incorporated the federal court's reasoning within its resolution. As appellees note, the federal court reviewed the record, made detailed findings, and applied the law. Thus, it was unnecessary for the Council to repeat the same findings and legal analysis that the federal court applied.

Appellants take the position that the findings and legal analysis of the federal court cannot be applied to the County's resolutions for three reasons: 1) there were different issues at stake, 2) the County had to make an independent decision, and 3) the federal court's decision discussed only the 2001 Water and Sewer Plan, not the 2008 Water and Sewer Plan. We are not persuaded by any of these reasons. First, while it is true that the federal court was interpreting federal law, its fact-finding applied with equal force to the issues here. For instance, throughout the entire course of RHI's application history, the County's explanation for its opposition never changed. Thus, the County was allowed to use the federal court's fact-finding, which discredited these environmental objections, to help it decide whether to approve RHI's application. Moreover, the County made an independent decision. Because the County was allowed to rely on the federal court's fact-finding and because the proffered reasons for rejecting RHI's application were deemed

illegitimate, the only rational decision the County could make at that juncture was to approve RHI's request. Third, the federal court specifically stated in a footnote to its opinion that relying on the 2008 plan, instead of the 2001 plan, would not alter its fact-finding or analysis.[16]

We note also that the overall purpose of the rule requiring factual findings and legal analysis is to provide an adequate record on review. *See Mehrling v. Nationwide Ins. Co.*, 371 Md. 40, 64 (2002) (stating that the purpose of requiring an agency or governing body to articulate findings of fact and conclusion of law it to "apprise the parties of the basis for the agency's decision and to facilitate judicial review"). Here, the parties are well aware of the basis for the Council's resolutions, and the record is sufficiently detailed for us to undertake judicial review.

Appellants next argue that the administrative record fails to provide substantial evidence supporting the resolutions. Again, we disagree. The test for substantial evidence is "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Board of Physician Quality Assur. v. Banks*, 354 Md. 59, 68 (1999) (quoting *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 512 (1978). Here, there is adequate information in the record to support RHI's application for a category change. The federal court made specific findings that the County failed to produce any

___

[16] *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 831 F. Supp. 2d 871, 884 n.5 (D. Md. 2011).

evidence showing a negative environmental impact on Rocky Gorge Reservoir. *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 788 (D. Md. 2008) aff'd, 368 F. App'x 370 (4th Cir. 2010).   The court also found that the County did not demonstrate that "the impact on Rocky Gorge Reservoir would be of a different kind and/or degree than the impact on the Reservoir from the surrounding large-lot residential developments or from Dugan's Estates, which had its water and sewer category change application approved despite the fact that it was traversed by a stream that ran off directly into the reservoir." *Id*.

Moreover, as appellees point out, the record contains comments and recommendations from County agencies and the County Executive in support of the category change.  For example, the County's Department of Environmental Resources (DER) analyzed how the application complied with the standards necessary for approval stating, "[t]he project is subject to and consistent with the contiguity policy within the Developing Tier.  It also meets "the minimum criteria for development planning on community."  DER also noted that the application was "generally consistent with the criteria established in the [2008 Water and Sewer] Plan."  There was also testimony from a civil engineer, Charles Grimsley, in support of the development.  He testified that "the proposed development also protects and does not infringe upon the existing wetlands buffer on site."

Despite this evidence, appellants insist that the commentary from the County

agencies and civil engineer are not sufficiently specific to constitute substantial evidence.

They cite to *Habliston v. City of Salisbury*, 258 Md. 350, 361 (1970), and *Heller v. Prince George's County*, 264 Md. 410, 417 (1972), to argue that conclusory statements made by County agencies do not have probative force. While we agree with the reasoning in *Habliston* and *Heller*, we think the facts here are distinguishable from those cases. In *Habliston* and *Heller*, there was evidence in the record that caused the courts to doubt the agencies' views. *See Habliston v. City of Salisbury*, 258 Md. 350, 361 (1970) (stating that it was obvious that "there was little, if any, investigation and study of the situation by the staff and that its conclusions do not rise much, if at all, above the level of wishful thinking") and *Heller v. Prince George's Cnty*., 264 Md. 410, 417-18 (1972) (stating that one of the witnesses gave uncontradicted testimony that there were "'18 substantial errors' in the report of the Technical Staff"). Here, there was no evidence that there were any problems with the analysis performed by the County's agencies. Thus, we hold that there was substantial evidence in the administrative record to support the Council's amendments to the water and sewer plan.

Appellants next argue that the Council lacked legal authority to consider RHI's application for a water and sewer amendment because the County failed to certify first that the proposed amendment conformed to its 2008 General Plan. Once again, we disagree.

Maryland law imposes two requirements on the County before it can adopt an

amendment to its water and sewer plan. First, the County must review the proposed amendment. Maryland Code (1983, 2007 Repl.Vol., 2013 Supp.), § 9–506 (a)(1) of the Environment Article ("EA"). Second, the County must certify that the proposed amendment is consistent with the County's Master Plan. *Id*. However, in Prince George's County, the review and comments of the Maryland-National Capital Park and Planning Commission substitute for review by an official planning agency. EA § 9–506 (a)(2).

Appellants argue that because the County never complied with the certification requirements, it could not adopt amendments to the water and sewer plan. Appellees counter that while there was no separate certification process, none was required. Appellees argue that the review performed by the Maryland-National Capital Park and Planning Commission substitutes for both review and certification. We examine how much weight to give the County's interpretation based on Maryland's standards of administrative deference to agencies. Under *Falik v. Prince George's Hosp. & Med. Ctr.*, both "legislative acquiescence" to long-standing interpretations of statutory provisions and long-standing administrative interpretations "established at the same time as the legislative enactment and continued uniformly thereafter" are accorded persuasive authority. 322 Md. 409, 415-16 (1991). Because we are unable to discern from the record whether this was a longstanding administrative interpretation, we decline to accord the County's interpretation weight.

-16-

Nonetheless, we think the Maryland-National Capital Park and Planning Commission's review in EA § 9–506 (a)(2) substitutes fully for the two step review and certification process described in EA § 9–506 (a)(1). The language "except as provided in paragraphs (2) and (3)" indicates that paragraph (a)(1) is not applicable to paragraph (a)(2). EA § 9–506 (a)(1). Moreover, if the General Assembly intended for the County to perform an additional certification after the Maryland-National Capital Park and Planning Commission's review, it could have stated that intention. Instead, it provided that the Maryland-National Capital Park and Planning Commission's review "constitutes full compliance" with the review process. EA § 9–506 (a)(2). The Council had legal authority to consider RHI's application for a water and sewer amendment, and it did so.

## II.

Appellants finally argue that MDE acted outside its legal boundaries when it approved the Council's amendments to RHI's water and sewer plan.[17] Appellants contend that MDE did not have the authority to approve the Council's amendments because the Council never certified that the amendments were consistent with the County's Master Plan. For the reasons discussed above, we do not think the Council was required to certify that the amendments were consistent with the County's Master Plan. MDE has the power to review and approve amendments to the County's plan under EA §

---

[17] The parties agree that MDE acted in a quasi-legislative function in approving the Council's amendments to RHI's water and sewer plan.

-17-

9–507 (a), and it used that authority to approve the Council's amendments.  Thus, we uphold the Council's approval of the resolutions and MDE's approval of the Council's amendments to the water and sewer plan, and we affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED.  COSTS TO BE PAID BY APPELLANTS.**