945 A.2d 648

APPLETON REGIONAL COMMUNITY ALLIANCE, et al.

v.

The COUNTY COMMISSIONERS OF CECIL COUNTY, MD, et al.

No. 92 Sept.Term, 2007.

Court of Appeals of Maryland.

April 7, 2008.

G. Macy Nelson (Paul N. DeSantis, Washington, DC), on brief, for petitioners.

Dwight E. Thomey (Baker, Thomey & Emrey, P.A., Elkton, MD), on brief, Richard A. Bechtel, II (Kevin J. Mahoney of Gessner, Snee, Mahoney & Lutche, P.A., Bel Air, MD), on brief, for respondent.

ARGUED BEFORE BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, JJ., and JOHN C. ELDRIDGE and DALE R. CATHELL, JJ. (Retired, specially assigned).

HARRELL, Judge.

## I.

Aston Development Group, Inc., ("Aston") hopes to construct 302 dwellings on 390 acres of land in Cecil County, intending to name the project "Aston Pointe" (the "Property").[1] The Property, which abuts a nature preserve, presently

---

1. The Property is identified on Cecil County Tax Map. No. 14, as Parcels 7, 8, 15, 28, 29, 35, 38, 39, 50, 97, 119, 129, 284, 368, 479, 675, 690, and 709.

lacks public water and sewer line service. In June 2004, Aston, as to the initial governmental step to arrange other than individual well and septic service for each proposed dwelling, requested the Board of County Commissioners of Cecil County (the "Board") to amend the Cecil County Master Water and Sewer Plan (the "Plan") to "upgrade" the Property to areas W2 and S2. "W2 and/or S2 areas are areas that may be served by central water and/or sewage facilities within 0 to 5 years." Cecil County Master Water & Sewer Plan § 1.3.3. Having received from the Cecil County Planning Commission (the "Planning Commission") an unfavorable recommendation regarding the request, the Board rejected Aston's initial request for amendment on 13 July 2004.

In December 2004, Aston renewed its request for amendment of the Plan. On 4 January 2005, the Board held a public hearing on the matter. A final decision on the second requested amendment was postponed because the Board asked Aston to produce evidence that 400,000 gallons of water per day would be available from wells to be drilled on the Property. After drilling test wells and submitting the results to the Maryland Department of the Environment (MDE), Aston obtained a letter from MDE stating that the proposed number of wells on the Property could produce between 369,000 and 452,000 gallons of water daily, depending on ambient conditions. MDE noted, however, that further analysis was required because watershed water balance requirements could reduce significantly the amount of water ultimately allowed to be withdrawn. On 24 August 2005, the Board denied Aston's second request for an amendment to the Plan.

After Aston drilled additional test wells on the Property with a view to increasing the amount of water that might be extracted, Aston requested for the third time an amendment to the Plan.[2] On 18 January 2006, the Planning Commission

---

**2.** Aston's third request to amend the Plan to re-designate the Property to the W2 and S2 areas included additional parcels of land, known as the Wohner, Frazier, and Birney properties. These additional properties are identified on Cecil County Tax Map No. 14 as Parcels, 95, 146,

voted to recommend to the Board that the Board grant Aston's requested amendment. The MDE, on 27 January 2006, indicated that it would not review the additional water and well information until the Board approved and submitted to MDE a proposed amendment to the Plan for the Property.[3] The Board voted 3–2 to approve Aston's proposed amendment on 31 January 2006. On 1 February 2006, and again on 17 April 2006, the Cecil County Director of Planning, Zoning, and Parks and Recreation submitted the proposed amendment to MDE for its approval.[4]

During the time between the two submissions to MDE and before MDE acted on them, a group of Cecil County residents opposed to the amendment to the Plan specifically and the Aston Pointe development generally filed on 23 February 2006, individually and collectively as the Appleton Regional

---

492, and 684. All parcels affected by the amendment were, at all pertinent times, within the Suburban Residential zoning district, provided for by the Cecil County zoning regulations.

3. Maryland Code (1982, 2007 Repl.Vol.), Environmental Article, § 9–507 requires that any amendment to the Plan be submitted to MDE for approval. Until approved by MDE, amendments to the Plan adopted by the Board are deemed to be "proposed ... amendments." *Id.* MDE declined to provided further analysis of the quantity of water available to be extracted from the Property, citing a "very large workload."

4. Maryland Code (1982, 2007 Repl.Vol.), Environmental Article, § 9–503(c) states:
    (c) Each county governing body shall adopt and submit to the Department a revision or amendment to its county plan if:
    (1) The governing body considers a revision or amendment necessary; or
    (2) The Department requires a revision or amendment
    Moreover, Maryland Code (1982, 2007 Repl.Vol.), Environmental Article, § 9–507(a) provides that:
    (a) When a county governing body submits its proposed county plan or a proposed revision or amendment of its county plan to the Department, the Department may:
    (1) Approve the proposal;
    (2) Disapprove the proposal;
    (3) If the part approved includes all of the required elements of a county plan, approve the proposal in part and disapprove it in part; or
    (4) Modify or take other appropriate action on the proposal.

Community Alliance (Appleton), a Petition for Judicial Review in the Circuit County for Cecil County challenging the Board's approval of the proposed amendment to the Plan. Both Aston and the Board (collectively here, "Respondents") filed Motions to Dismiss.[5] The Circuit Court granted the motions on 7 August 2006. Appleton noted its appeal on 25 August 2006 to the Court of Special Appeals from the Circuit Court's dismissal of the Petition for Judicial Review.

MDE responded on 15 September 2006 to the Board's submission of the proposed amendment to the Plan, noting that "MDE approves the map amendment, in the context of the existing [Cecil] County Water and Sewerage Plan. . . ."

On 27 October 2006, Appleton filed a second action in the Circuit Court for Cecil County seeking a Writ of Mandamus, Declaratory Judgment, and Injunctive Relief. Only the Board was named as defendant.[6] In this action, Appleton limited its challenge to the Board's approval of the proposed amendment to the Plan, making no mention of the MDE approval thereof. Appleton requested that the Circuit Court vacate the vote of the Board and remand to the Board with instructions to deny Aston's request for the proposed amendment. In the alternative, Appleton sought to have declared that the Board was without authority to approve the proposed amendment and to enjoin the Board from taking action to approve the proposed amendment. That action, Case No. 07–C–06–000414, was dismissed, without prejudice, pending the outcome of the present litigation.

The Court of Special Appeals, on Appleton's appeal of the Circuit Court's dismissal of its Petition for Judicial Review,

---

5. The Board argued that the amendment to the Plan was a "planning" decision and thus not subject to judicial review. The Board also contended that its approval of the amendment was not a final act. Aston adopted the Board's arguments in its own motion to dismiss and added an a argument that the Petitioners lacked standing to challenge the Board's actions.

6. Although we are unable to be certain on the record before us, Aston may have intervened in this action because a docket reference describes it as a party.

affirmed in an unreported opinion filed on 28 August 2007. We granted Appleton's Petition for Certiorari to consider whether the Circuit Court for Cecil County was correct in dismissing Appleton's Petition for Judicial Review.[7] 402 Md. 352, 936 A.2d 850 (2007).

## II.

■ The Court of Special Appeals affirmed the Circuit Court's dismissal of Appleton's Petition for Judicial Review because: (1) the proposed amendment to the Plan approved by the Board is not a "zoning action," subject to a petition for judicial review action, within the meaning of Maryland Code (1957, 2003 Repl.Vol.), Article 66B § 4.08; and (2) the case is not ripe because the Board's approval of the proposed amendment was not the final administrative action rendering the Plan amendment effective and final for governmental purposes. Aston argued to the intermediate appellate court that Appleton's Petition for Judicial Review action was anathema for a third reason, which went undecided by the Court of Special Appeals, mootness. Specifically, Aston contended that the case is moot because MDE, following initiation of Appleton's Petition for Judicial Review, approved finally the Board's proposed action. All of these contentions present threshold challenges to consideration of the merits of Appleton's main contentions as to why the Board's action should be reversed. We hold that the proposed amendment to the Plan is not a "zoning action" within the meaning of Maryland Code (1957, 2003 Repl.Vol.), Article 66B § 4.08(a). Therefore, we need decide nothing else in this case.

■ "[I]n order for an administrative agency's action properly to be before this Court (or any court) for [statutory]

---

7. Specifically, Appleton's sole question presented in its successful Petition for Writ of Certiorari was:

> Whether a decision by the Board of County Commissioners for Cecil County to amend, on a piecemeal basis, the county's master water and sewer plan on a voice vote without discussion or written decision is a final decision subject to judicial review?

judicial review, there generally must be a legislative grant of the right to seek judicial review." *Harvey v. Marshall,* 389 Md. 243, 273, 884 A.2d 1171, 1189 (2005). Maryland Rule 7–201(a) regulates an action to review an order or action of an administrative agency "where judicial review is authorized by statute . . . ." [8] *See Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 541, 723 A.2d 440, 445 (1999) (noting that Maryland Rules 7–201 and 7–202 do "not grant a right of judicial review, and . . . [are] inapplicable where judicial review is not authorized by statute"). In satisfaction of the latter threshold requirement, Appleton points to Maryland Code (1957, 2003 Repl.Vol.), Article 66B, § 4.08. Section 4.08 provides that an aggrieved person may "appeal a decision of a board of appeals or a *zoning action* of a local legislative body to the circuit court of the county . . . ." (emphasis added). Thus, an ultimate (and potentially dispositive) issue in the current posture of this case is whether the proposed amendment to the Plan approved by the Board constitutes a "zoning action" for which judicial review is authorized. Respondents contend that the Board's action constituted a planning, rather than a zoning, action. We agree.

We essentially summarized recently the test to be applied in determining whether a governmental action constitutes a judicially reviewable "zoning action" for purposes of § 4.08.

> To summarize, the pertinent criteria for determining whether a particular action by the [legislative body] is a "zoning action" are: first, there must be a determination that the process observed by the governmental body in affecting an alleged zoning action was quasi-judicial in nature, rather than legislative. A quasi-judicial proceeding in the zoning context is found where, at a minimum, there is a fact-finding

---

**8.** We have not found, nor has Appleton commended to our attention, any provision in the Cecil County Code or Master Water and Sewer Plan, or the provisions of the Maryland Code, Environmental Article governing comprehensive water and sewerage plans, authorizing a petition for judicial review action of an interlocutory or final decision regarding amendments to a County Master Water and Sewer Plan.

process that entails the holding of a hearing, the receipt of factual and opinion testimony and/or forms of documentary evidence, and a particularized conclusion, based upon delineated statutory standards, for the unique development proposal for the specific parcel or assemblage of land in question. Second, if the governmental act in question involves a quasi-judicial process, the inquiry moves to the question of whether it qualifies as a "zoning action." Where the [legislative body] exercises its discretion in deciding the permissible uses and other characteristics of a specific parcel or assemblage of land upon a deliberation of the unique circumstances of the affected land and its surrounding environs, a "zoning action" is the result.

*Md. Overpak Corp. v. Mayor & City Council of Balt.*, 395 Md. 16, 53, 909 A.2d 235, 257 (2006).[9]

■ In its brief to this Court, Appleton devotes substantial effort to demonstrating that the Board's proceeding to consider and act on the proposed amendment to the Plan was quasi-judicial in nature. "Indicia of a quasi-judicial process include, a 'fact-finding process that entails the holding of a hearing, the receipt of factual and opinion testimony and/or forms of documentary evidence, and a particularized conclusion, based upon delineated statutory standards, for the unique development proposal for the specific parcel or assemblage of land in question.' " *MBC Realty, LLC v. Mayor & City Council of Balt.*, 403 Md. 216, 236, 941 A.2d 1052, 1063 (2008) (quoting *Md. Overpak*, 395 Md. at 53, 909 A.2d at 257). Appleton notes that: the proposed Plan amendment process was initiated by a single party, Aston; required a hearing with receipt of factual and opinion testimony; and, covered only a few specific,

---

**9.** *Md. Overpak* addressed the term "zoning action" as used in the zoning statute specifically applicable to Baltimore City, Maryland Code (1957, 2003 Repl.Vol.), Article 66B, § 2.09(a). The term "zoning action" as used in Maryland Code (1957, 2003 Repl.Vol.), Article 66B, § 4.08(a) is, however, identical. *See Anderson House, LLC v. Mayor & City Council of Rockville*, 402 Md. 689, 710, 939 A.2d 116, 129 (2008) (describing the two statutory sections as "twin[s]").

related parcels of land.[10]  We assume, without deciding, that the process by which the amendment was adopted was quasi-judicial in nature.  "The appellation of 'quasi-judicial,' however, when assigned to governmental processes and acts, is not talismanic for declaration of a 'zoning action,' obviating the need for further inquiry into whether the act in question is eligible for statutory judicial review.  Rather, it simply denotes certain processes involved in an 'action'. . . ."  *Md. Overpak*, 395 Md. at 37, 909 A.2d at 247.

■  A "zoning" action "decides the use of a specific parcel or assemblage of parcels of land" and "creates or modifies substantively the governing zoning classification or defines the permissible uses, building and lot sizes, population density, topographical and physical features, and other characteristics of a specific parcel or assemblage of parcels of land by exercising some discretionary judgment after the consideration of the unique circumstances of the affected parcels and buildings."  *Md. Overpak*, 395 Md. at 50, 909 A.2d at 255. The Board's action in the present case did not address permissible uses of the Property directly.  Nothing about the Property's zoning status changed as a result of the Board's actions. Prior to the proposed amendment to the Plan, the Property was zoned Suburban Residential.  It remained so as the result of the Board's approval of the proposed amendment.  The Board's action constitutes an exercise in planning, not zoning. As we noted in *Mayor & Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 529–30, 814 A.2d 469, 477–78 (2002):

> Plans are long term and theoretical, and usually contain elements concerning transportation and public facilities, recommended zoning, and other land use recommendations and proposals. Zoning, however, is a more finite term, and its

10.  It is not entirely clear on this record whether Aston owned or controlled all of the parcels of land embraced by the proposed Plan amendment approved by the Board.  We shall assume, *arguendo,* that the proposed Plan amendment affected only parcels owned or controlled by Aston.

primary objective is the immediate regulation of property use through the use of use classifications, some relatively rigid and some more flexible.

The distinction between planning and zoning is well established in Maryland law. The Court of Special Appeals noted in *Stephans v. Board of County Commissioners of Carroll County*, 41 Md.App. 494, 502, 397 A.2d 289, 293 (1979), *reversed in part on other grounds*, 286 Md. 384, 408 A.2d 1017, that "[i]t seems patent that in adopting the 'Mini Plan' the legislative body did nothing more than adopt a plan which, in and of itself, did nothing, nor would it do anything until it was implemented by the Zoning Ordinance Text Amendment and Zoning Map Amendment." The Court of Appeals, in affirming that part of the Court of Special Appeals decision, stated that "[c]hallenges in the courts to the adoption of *comprehensive plans*, zoning texts, and zoning text amendments must come in proceedings other than administrative appeals." (emphasis added). *Board of County Comm'rs of Carroll County v. Stephans*, 286 Md. 384, 397, 408 A.2d 1017, 1023 (1979), *abrogated on other grounds, Md. Overpak*, 395 Md. at 49–50, 909 A.2d at 254–55.

The Court of Special Appeals addressed the issue of an amendment to a Master Water and Sewer Plan on facts nearly identical to the present case. In *Gregory v. Board of County Commissioners of Frederick County*, 89 Md.App. 635, 599 A.2d 469 (1991), the Frederick County Commissioners amended that County's Master Water and Sewer Plan to approve "the establishment of a public water supply system in a newly created subregion of the New Market–Monrovia sanitary region of Frederick County." *Gregory*, 89 Md.App. at 638, 599 A.2d at 470. Residents opposed to the amendment filed a petition for judicial review under Article 66B, § 4.08(a). The Court of Special Appeals held that the amendment was not a "zoning action" within the meaning of § 4.08. Rather, the court instructed that the proper method for obtaining judicial scrutiny was either by filing a mandamus or declaratory judgment action. *Gregory*, 89 Md.App. at 638 n. 5, 599 A.2d

at 473 n. 5 (citing *Carusillo v. Prince George's County*, 289 Md. 436, 424 A.2d 1106 (1981)).

Appleton's attempts to distinguish *Gregory* are unpersuasive. Appleton argues that the amendment in *Gregory* affected an entire "subregion." By contrast, Appleton asserts, the amendment to the Plan in the present case was described as "piecemeal." [11] Therefore, Appleton contends, the amendment

---

**11.** Appleton notes that counsel for Aston stated at the public hearing before the Board that Aston was "asking for ... piecemeal amendments" to the Plan. The use of the word "piecemeal" in this context does not implicate, however, an analogy to "piecemeal zoning" for which Appleton argues. "Zoning authorities in Maryland implement their plans and determinations regarding appropriate land use zoning categories primarily through three processes: 1) original zoning; 2) comprehensive rezoning; and 3) piecemeal rezoning." *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 532, 814 A.2d 469, 479 (2002). "Piecemeal and spot zoning concern specific pieces of property, and such actions are ordinarily initiated by the property owner." *Armstrong v. Mayor & City Council of Balt.*, 169 Md.App. 655, 673, 906 A.2d 415, 426 (2006) (citing *Rylyns*, 372 Md. at 535, 814 A.2d at 481). Piecemeal zoning, as a quasi-judicial action, is subject to judicial review.

A statement of counsel at a public hearing before the governmental body may be considered a concession of fact under proper circumstances, but here we are concerned with a legal conclusion. Aston's counsel's off-hand remark is of no legal significance in determining the legal status of the Board's action. In addition, Appleton takes the use of the word "piecemeal" out of context. The full quotation, in context, is as follows:

So, you may ask, why is it that we're here in the first place requesting an amendment, and this belongs sort of—it is a long-standing issue, I think, with regard to the County and its Master Water and Sewer Plan, and there has been sort of a lack of long-term planning in that regard, and what that basically has made us do is to request an amendment to catch up with the orderly expansion of infrastructure which is the ultimate goal of the Comprehensive Plan.

Because the Master Water and Sewer Plan has not kept pace with the land use aspects of the County, we find ourselves asking for these piecemeal amendments to the plan.

When viewing the statement in context, it becomes clear that counsel is referring to incremental amendments to promote the "orderly" expansion of utilities, the goal of the Plan. *See* Maryland Code (1982, 2007 Repl.Vol.), Environmental Article, § 9–505(a)(1) (requiring that "county plan[s]" provide for the "orderly expansion and extension" of "community water supply systems" and "community sewerage systems"). It appears that counsel used the term "piecemeal" in its traditional sense. Webster's Ninth New Collegiate Dictionary (1989)

lacks the comprehensive basis necessary to be considered properly as "planning." Appleton's argument fails for any of three reasons. The first is that all amendments to a Master Water and Sewer Plan are, by definition, comprehensive planning actions. "Indeed, we are unable to conceive of a situation in which the adoption of an amendment to a county's comprehensive water and sewerage plan would lack such a comprehensive basis." *Gregory*, 89 Md.App. at 643, 599 A.2d at 473. The Court in Gregory concluded that "a county's comprehensive water and sewerage plan has, by definition, a broad or comprehensive land use planning basis...." *Id.* The purpose of the Plan is to "[p]rovide for the orderly expansion and extension" of water and sewer infrastructure. Maryland Code (1982, 2007 Repl.Vol.), Environmental Article, § 9–505(a)(1). It is quite possible that such "orderly ... extension" only will be accomplished incrementally and at the margin. Thus, merely because amendments to the Plan occur in small steps does not mean that the inherent planning process is transformed into a "zoning action."

Second, assuming, *arguendo*, that a "piecemeal" planning action exists, § 4.08 permits an appeal to be maintained only for a piecemeal *"zoning* action," not a piecemeal *planning* action. *See Gregory*, 89 Md.App. at 641, 599 A.2d at 472 ("Neither a planning action nor a comprehensive zoning action is appealable under § 4.08(a) as a 'zoning action.' Only a piecemeal zoning action ... is appealable under § 4.08(a) as a 'zoning action.' " (citation omitted)).

Finally, Appleton's arguments fail as a factual matter. The proposed amendment to the Plan, and the resultant adjustments to the water and sewer system in the area, were the proposed amendment to become effective, apparently will have an effect beyond the specific parcels proposed to be changed to W2 and S2. In a letter discussing the proposed amendment,

---

defines "piecemeal" as "one piece at a time; gradually." In this respect, counsel argued at the public hearing that the "orderly expansion" of utilities required small, gradual amendments to the Plan. This in no way invokes zoning.

the Cecil County Director of Public Works noted that the benefits to the surrounding area include "reducing reliance upon United Water Delaware supply," "[s]ubstantial costs savings to the County by avoiding development of additional water resources," "balance[d] flow and pressure . . . providing for better quality and safer service," "[e]nvironmental improvements by sending Highlands [Wastewater Treatment Plant] flow to Meadowview [Wastewater Treatment Plant]" and "[s]ubstantial cost savings to the County by avoiding upgrade . . . of the Highlands [Wastewater Treatment Plant]."

Appleton contends that *Maryland Overpak* directs that we should hold that the Board's action constitutes a zoning action. *Maryland Overpak*, however, is clearly distinguishable. In *Maryland Overpak*, the Mayor and City Council of Baltimore City enacted an amendment to a previously approved planned unit development ("PUD"). We held that the amendment to the PUD was an appealable zoning action. "Essentially, a PUD, when approved by a governmental body, grants a variety of uses within a development that would otherwise not be permitted. . . ." *Md. Overpak*, 395 Md. at 23 n. 4, 909 A.2d at 239 n. 4. The proposed amendment to the Plan at issue in this case, however, did not alter the type or range of permissible uses of the Property allowed by the existing zoning. In *Maryland Overpak* we noted that "a PUD partakes more of the characteristics of a conditional use than any other zoning construct or mechanism recognized in Baltimore City." *Md. Overpak*, 395 Md. at 30, 909 A.2d at 243. By contrast, the proposed amendment to the Plan in the present case bears no resemblance to a conditional use. At best, the proposed amendment may affect the yield of dwelling units achievable in developing the Property, but even then the yield may not exceed the maximum density allowed by the zoning of the Property then and now.

We also note that, in previous reported appellate cases, challenges to amendments to state-required comprehensive water/sewerage and solid waste management plans have been brought as declaratory judgment or mandamus actions, not as petitions seeking judicial review of zoning actions. *See Coun-*

*ty Comm'rs of Queen Anne's County v. Days Cove Reclamation Co.*, 122 Md.App. 505, 525, 713 A.2d 351, 361 (1998) (*Days Cove* ) (declaratory judgment and mandamus action challenging amendment to Solid Waste Management plan); *Friends of Mount Aventine v. Carroll,* 103 Md.App. 204, 652 A.2d 1197 (1995) (declaratory judgment action challenging amendment to Master Water and Sewer Plan); *Holmes v. Md. Reclamation Associates,* 90 Md.App. 120, 600 A.2d 864 (1992) (noting that the plaintiff was seeking "declaratory relief" from amendment to Solid Waste Management Plan and distinguishing "zoning" case law). None of these cases discuss whether a proposed or final amendment to the plan was a "zoning action," despite the fact that a "zoning action" ordinarily would not be reviewable in a declaratory judgment action. *See Anderson House, LLC v. Mayor & City Council of Rockville,* 402 Md. 689, 704, 939 A.2d 116, 125 (2008) ("Thus, the general rule is that if review is available under the special statutory remedy of § 4.08(a), no declaratory judgment action is available."); *Josephson v. City of Annapolis,* 353 Md. 667, 728 A.2d 690 (1998) ("[T]he general rule, which applies in this case, remains that when administrative remedies exist in zoning cases, they must be exhausted before other actions, including requests for declaratory judgments, mandamus and injunctive relief, may be brought."). If there had been any genuine dispute in those cases as to whether the challenged action was a "zoning action," the Court of Special Appeals would have analyzed, as a threshold matter, whether a declaratory judgment action was the proper vehicle for bringing such a challenge. No such analysis was performed because none was required. The actions complained of by the plaintiffs in those cases were recognized as clearly falling outside the realm of "zoning action[s]," as does the Board's action in the present case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**