*County Council of Prince George's County, Sitting as the District Council v. Convenience & Dollar Market/Eagle Management Company, No. 1415, September Term 2014, Opinion by Kehoe, J.*

**LAND USE – MARYLAND-WASHINGTON REGIONAL DISTRICT ACT – PRINCE GEORGE'S COUNTY DISTRICT COUNCIL REVIEW OF PLANNING BOARD DECISIONS**

The County Council of Prince George's County, sitting as the District Council, exercises appellate rather than *de novo* jurisdiction when it reviews a decision by the Planning Board to grant or deny an application for a nonconforming use certification. Deciding whether something is a nonconforming use is a quintessentially local question, and therefore is within the Planning Board's original jurisdiction. *See* Md. Code Ann., § 20-202(b)(1) of the Land Use Article; *Prince George's County v. Zimmer Development*, 444 Md. 490, 584 (2015).

Circuit Court for Prince George's County
Case No. CAL 14-04253

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1415

September Term, 2014

_____

COUNTY COUNCIL OF PRINCE
GEORGE'S COUNTY SITTING AS THE
DISTRICT COUNCIL

v.

CONVENIENCE & DOLLAR MARKET/
EAGLE MANAGEMENT COMPANY
_____

Woodward, C.J.,
Kehoe,
Leahy,

JJ.
_____

Opinion by Kehoe, J.
_____

Filed: September 5, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

In *Prince George's County v. Zimmer Development*, 444 Md. 490, 584 (2015), the Court of Appeals held that the District Council exercises appellate jurisdiction when it reviews decisions of the Planning Board approving certain types of site plan applications, specifically, comprehensive and specific design plans submitted as part of the development review process for a property located in a comprehensive design zone. The Court further held that, because the Council exercises appellate jurisdiction, it can reverse a Planning Board decision "only if the Board's decision was not supported by substantial evidence, was arbitrary, capricious, or illegal otherwise[.]" *Id.*

In this appeal from a judgment of the Circuit Court for Prince George's County, we must apply *Zimmer's* teachings as to the nature of the District Council's jurisdiction and the scope of its review to a decision by the Planning Board granting Convenience & Dollar Plus/Eagle Management Company's application to certify that the convenience store operating on its property is a nonconforming use. We will hold that the District Council exercises appellate jurisdiction when it reviews such decisions by the Planning Board. Because the Planning Board's decision in the present case was supported by substantial evidence, and was neither flawed by a legal error nor otherwise arbitrary or capricious, the District Council erred when it reversed the Planning Board's decision.

## Background

### 1. An Abbreviated Statutory Overview

### The Regional District Act

The primary source of Montgomery and Prince George's Counties' authority to engage in land use regulation is the Maryland-Washington Regional District Act (the "RDA").[1] *Zimmer*, 444 Md. at 524–25; *County Council of Prince George's County v. Brandywine Enterprises, Inc.*, 350 Md. 339, 342 (1998). The RDA is now codified as Md. Code Ann. (2012), Division II of the Land Use Article ("LU"). The

_____

[1] The RDA establishes the Maryland-Washington Regional District and the Maryland-Washington Metropolitan District. *See* LU § 20-101 (Regional District); LU § 19-101 (Metropolitan District). In this appeal, we are concerned with the Regional District. It encompasses most of Montgomery County and all of Prince George's County "except for the City of Laurel, as its boundaries existed on July 1, 2008." LU § 20-101.

The terms "Regional District" and "Metropolitan District" reflect the Maryland-National Park and Planning Commission's dual role as an entity engaged in parks and planning. As the Court explained in *Boyle v. Maryland-National Park & Planning Comm'n*, 385 Md. 142, 146 (2005):

> The Commission is a bi-county agency created by the General Assembly to develop both general and functional plans of proposed land development for the Washington Metropolitan District, which consists of most of Montgomery and Prince George's Counties. That is the main "planning" function. In carrying out the general plan, the Commission is authorized to acquire property within the District for roads, parks, forests, and other recreation facilities, and to improve and control such property for those purposes. That is the main "park" function.

(Citations omitted.)

provisions of the RDA that are relevant to the issues raised in this appeal are implemented in Prince George's County through the Prince George's County Zoning Ordinance, which is codified as Title 27 of the Prince George's County Code (the "PGGC").

The RDA and the Zoning Ordinance are complicated statutes with many moving parts. Writing for the Court in *Zimmer,* the Honorable Glenn T. Harrell, Jr. examined portions of the RDA and Title 27 in the context of underlying principles of land use law to give context to the contentions raised in that case. 444 Md. at 501–36. Judge Harrell's cogent and thorough analysis is our starting point, and we will refer to it frequently in the ensuing pages.

There are two broad categories of land use control: zoning and planning. *Zimmer,* 444 Md. at 505 (citing, among other authorities, *Appleton Regional Community Alliance v. County Comm'rs of Cecil County,* 404 Md. 92, 102, (2008); and *Mueller v. People's Counsel for Baltimore County,* 177 Md. App. 43, 68 (2007)).

"Zoning" is "the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some degree to serve the interests of the whole territory affected by the plan." *Zimmer,* 444 Md. at 505 (quoting *Maryland Overpak Corp. v. Mayor and City Council of Baltimore*, 395 Md. 16, 48 (2006)). Necessarily implicit in the power to establish

use districts and zoning regulations is the authority to enforce their strictures. Accordingly, "parcels must be put to use in accordance with their zoning[.]" *Id.* There are exceptions to this rule; and one is the concept of a non-conforming use—that is, a use that either: (1) had existed either prior to original comprehensive zoning affecting the property; or (2) had been permitted by the zoning regulations in the past, but is no longer permitted because of an intervening change in the law—may continue, subject to amortization in certain circumstances. *Zimmer,* 444 Md. at 505. This concept is codified in the RDA. *See* LU § 22-113.[2]

The concept of "planning" is broader in scope. "Planning concerns 'the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience[.]'" *Zimmer*, 444 Md. at 505 (quoting 1 E.C. YOKLEY, ZONING LAW AND PRACTICE § 1–2 (4th ed. 1978) (other citation omitted)). One aspect of planning is the formulation of "plans," which are documents (typically approved by the local legislature) that "contain elements concerning transportation and public facilities, recommended zoning, and other land use recommendations and proposals."

---

[2] LU § 22-113 states:

> A person may continue, and appropriate licenses may be issued to the person for, a lawful nonconforming use existing on the effective date of the respective zoning laws in the metropolitan district.

- 4 -

*Mayor & Council of Rockville v. Rylyns Enterprises*, 372 Md. 514, 529 (2002). Subdivision control, i.e., the regulation of the process by which larger tracts of land are divided into smaller ones for the purpose of residential, commercial, and industrial development, is an inherent aspect of the local planning function. *Zimmer*, 444 Md. at 505 (citing *Richmarr Holly Hills, Inc. v. American PCS, L.P.*, 117 Md. App. 607, 645–46 (1997)); *see also County Commissioners of Cecil County v. Gaste*r, 285 Md. 233, 249 (1979) (Without subdivision controls, "[p]lanning would be futile[.]")

The two concepts overlap. "Because 'planning and zoning complement each other and serve certain common objectives,' some implementation and enforcement procedures may have both planning and zoning aims." *Zimmer*, 444 Md. at 506 (quoting *People's Counsel for Baltimore County v. Surina*, 400 Md. 662, 689 (2007)).

What we have said so far doesn't distinguish Prince George's and Montgomery Counties from any other of the local jurisdictions in Maryland that exercise land use control authority. What sets these counties apart from the rest of the State is the way that planning and zoning authority is allocated among four agencies: the Maryland-National Park and Planning Commission (the "Commission"); the planning board of each county; the county councils, which are referred to "district

councils" when they exercise powers granted to them in the RDA[3]; and the county boards of appeal.[4] The RDA and, to some extent, the local laws of Prince George's and Montgomery counties, determine how specific land use control functions are allocated. When there is a conflict between the RDA and local law, the RDA prevails. *See Zimmer*, 444 Md. at 571.

The RDA assigns regional planning functions to the Commission, which is a non-partisan State agency consisting of ten members, five chosen from Montgomery and five from Prince George's County. LU § 15-102.[5]

---

[3] *See* LU § 14-101(f):

> "District council" means:
> (1) for a single county, the county council sitting as the district council of the county with respect to that portion of the regional district in the county under § 22-101 of this article;
> (2) for the district council as a whole, the county councils of both counties sitting jointly as the bi-county district council of the regional district under § 22-102 of this article; or
> (3) for a municipal corporation, the governing body of the municipal corporation sitting as the district council for the municipal corporation under an agreement authorized under § 20-704(c) of this article.

LU§ 22-101 states:

> (a) The County Council of Montgomery County is the district council for that portion of the regional district located in Montgomery County.
> (b) The County Council of Prince George's County is the district council for that portion of the regional district located in Prince George's County.

[4] The provisions of the RDA relating to the Prince George's County Board of Appeals are found in LU §§ 22-303–311.

[5] As the Court noted in *Zimmer*:

The five members of the Commission from each county also serve as the planning board for that county. LU § 20-201. The Legislature set out the powers and duties of the planning boards in LU § 20-202 and § 20-207. Section 20-202 reads in pertinent part (emphasis added):

> (a)(1) Subject to paragraph (2) of this subsection, a county planning board:
> (i) is responsible for planning, subdivision, and zoning functions that *are primarily local in scope*; and
> (ii) shall exercise, within the county planning board's jurisdiction, the following powers:
> 1. planning;
> 2. zoning;
> 3. subdivision;
> 4. assignment of street names and house numbers; and
> 5. any related matter.
>
>        *   \*   \**
>
> (b)(1) A county planning board has *exclusive jurisdiction* over:
> (i) local functions, including:
> 1. the *administration of subdivision regulations*;
> 2. the preparation and adoption of recommendations to the district council with respect to zoning map amendments; and

---

The RDA evinces also an intent of the State Legislature to prevent corruption of or the appearance of impropriety by the commissioners. LU § 15–120 prohibits commissioners from: (1) participating in decisions as a commissioner in which the commissioner or the commissioner's immediate family has a financial interest; (2) taking certain employment while a commissioner; (3) soliciting or accepting gifts, disclosing confidential information, or using such information for private gain; or, (4) influencing other county or State officials in the conduct of their duties. Commissioners are required by the RDA to disclose publically any conflict with his or her official duties. LU § 15–120(g).

444 Md. at 528.

3. the assignment of street names and house numbers in the regional district[.]

* * *

In *Zimmer*, the Court construed LU § 20-202(b)(i) to mean that "the county planning boards have 'exclusive jurisdiction' over 'local functions,' but [it] does not detail each of the local functions within each jurisdiction." 444 Md. at 567 (footnotes omitted). As a general rule, "including" means "including by way of illustration and not by way of limitation." General Provisions Article § 1-110. *See also Hackley v. State*, 389 Md. 387, 393 (2005) ("Legislative drafters are to 'use "means" if the definition is intended to be exhaustive' . . . and to 'use "includes" if the definition is intended to be partial or illustrative[.]'" (quoting Department of Legislative Services, MARYLAND STYLE MANUAL FOR STATUTORY LAW 27 (1998) (some brackets omitted)).

For its part, LU § 20-207[6] provides that "functions not specifically allocated in this subtitle shall be assigned to the Commission or to one or both of the county planning boards, as needed." Such assignments must be approved both by the Commission and the

---

[6] Section 20-207 states:

(a) Subject to subsection (b) of this section, functions not specifically allocated in this subtitle shall be assigned to the Commission or to one or both of the county planning boards, as needed.
(b) The assignments shall:
(1) be made by resolution of the Commission with the approval of the respective county council; and
(2) carry out the policy that local or intracounty planning functions should be performed by the county planning boards.

county council. *Id.* Approval by the county council may be evidenced by a provision in a local land use ordinance. *Zimmer*, 444 Md. 566. The Commission's approval can be inferred from its administrative practices. *Id.* at 566–67 ("The MNCPPC appears to have accepted the assignment, as the Planning Board considers, in practice, CDPs and SDPs." (footnote omitted)).

No single provision of the RDA sets out the land use control authority of the district councils. However, and among other things, the district councils have the legislative authority to adopt and amend zoning laws, LU § 22-104; to establish programs for the transfer of development rights, LU § 22-105; to establish procedures for the resolution of disputes as to building permits and other "zoning questions," LU § 20-503; and to enact historic preservation regulations. LU § 22-108. Additionally, the RDA specifically provides that the Prince George's County District Council may exercise quasi-judicial review authority over certain land use decisions by that County's Planning Board. *See* LU § 25-210 (authorizing the District Council to review decisions of the Planning Board approving or disapproving detailed site plan applications).[7]

Finally, LU § 22-111 authorizes the District Council to make provisions in the County Zoning Ordinance for the County Board of Appeals to decide questions concerning the

---

[7] The District Council also exercises review authority over other Planning Board decisions pursuant to various provisions of the County Zoning Ordinance. *See, e.g.,* PGCC § 27-228.01 (setting out fifteen categories of Planning Board decisions subject to District Council review).

extension of legal nonconforming uses within or on buildings or lots, and the resumption of a nonconforming use after interruption "by fire or other calamity."[8] Section 22-111 is the centerpiece of one of the District Council's contentions on the merits of this case. We will discuss this statute in part 6 of this opinion.

The RDA's statutory directives are implemented in Prince George's County through the Prince George's County Code. The local legislation that speaks to our concern in this case—nonconforming uses—is found in the County's Zoning Ordinance.

### The Prince George's County Zoning Ordinance

The local law governing nonconforming uses in Prince George's County is found in Part 3, Division 6 of the Zoning Ordinance. PGCC § 27-241 sets out the general rule: a "nonconforming building, structure, or use may be continued, repaired, or maintained." Whether a use that is not permitted by the current zoning regulations is allowed by law to continue depends upon a process that the Zoning Ordinance labels "certification." In order for a use to be "certified," the property owner must present evidence showing (1) when the use was lawfully commenced on the property; (2) that the use has not ceased for more than

---

[8] LU § 22-111 dovetails with LU § 22-311, which provides that the Prince George's Board of Appeals may:

> in accordance with regulations adopted by the district council, hear and decide requests for:
>
> *   *   *
>
> (ii) decisions on permits for extensions, substitutions, restorations, reinstate- ments, or reconstructions of lawful nonconforming uses[.]

180 consecutive days after the use became nonconforming (this requirement has some exceptions); and (3) that, other than not having a use and occupancy permit, there are no local Code violations outstanding against the property.[9] If the property owner satisfies these criteria, it will receive a use and occupancy permit from the County.

An applicant begins the process by filing a written application with the Planning Board. The application must be supported by documentation, which can include "tax records, business records, public utility installation or payment records, and sworn affidavits." PGCC § 27-244(b)(2)(A). The Board provides public notice of the pending request. PGCC § 27-244(c). At this juncture, the statute sets out two alternative procedural paths:

---

[9] These requirements are found in various parts of PGCC § 27-244. Specifically, PGCC § 27-244(b)(2)(A) requires proof of "the commencing date and continuous existence of the nonconforming use[.]"

PGCC § 27-244(b)(2)(B) requires an applicant to demonstrate that:

> the nonconforming use has not ceased to operate for more than one hundred eighty (180) consecutive calendar days between the time the use became nonconforming and the date when the application is submitted, or that conditions of nonoperation for more than one hundred eighty (180) consecutive calendar days were beyond the applicant's and/or owner's control, were for the purpose of correcting Code violations, or were due to the seasonal nature of the use[.]"

Finally, pursuant to PGCC § 27-244(d)(1), an applicant must show that "the use to be certified as nonconforming has no outstanding Code violations with the Department of Permitting, Inspections, and Enforcement regarding the property other than failure to have a use and occupancy permit."

- 11 -

*First,* if there is no request for a public hearing before the Board, a Board staff member reviews the applicant's written submission. If the staff member concludes that the documentation supports certification, he or she makes a recommendation to the Board that the certification request be granted. A copy of the recommendation is sent to the District Council, the recommendation is posted on the Board's website, and notification is sent to interested parties. PGCC § 27-244(d)(3).

*Second,* if there is a request for a hearing, or if the Planning Board staffer concludes that the documentation submitted by the applicant is incomplete or not convincing, the Planning Board must conduct a public hearing and decide whether to grant the application. PGCC § 27-244(f)(1)(A)( 3). A copy of the Planning Board's decision is forwarded to the District Council.

Either way, the District Council can become involved. In the first scenario, the District Council may decide to review the Planning Board staff recommendation "on its own motion." PGCC § 27-244(e)(1). (This procedure is locally referred to as "calling up." *See Zimmer,* 444 Md. at 535.) If the Planning Board staff recommendation is called up by the District Council, the matter is set for a hearing before a zoning hearing examiner, who makes a recommendation to the Council. The District Council then makes a decision based primarily on the record developed in the hearing before the zoning hearing examiner.[10]

---

[10] More specifically, the zoning hearing examiner's recommendation can be appealed to the District Council. If this occurs, the Council will hold a public hearing with the argument "limited . . . to the record of the [zoning hearing examiner's] hearing." PGCC § 27-

In the present appeal, however, we are concerned with the second scenario, that is, one in which the Planning Board itself decides to grant or deny a certification application. In such instances, the District Council may call up the Planning Board's decision or a party may appeal the Board's decision to the District Council. PGCC § 27-244(f)(5)(A). In either event, the District Council will hold a public hearing and will:

> decide to affirm, reverse, or modify the recommendation of the Planning Board. The decision of the Council shall be based on the record made before the Planning Board. No new evidence shall be entered into the record of the case unless it is remanded to the Planning Board and a rehearing is ordered.

PGCC § 27-244(f)(5)(D).

## 2. Convenience & Dollar's Certification Application and the Board's Hearing

Convenience & Dollar has owned a small commercial property located on Southern Avenue near Capitol Heights since 2005. The property is improved by an 800-square-foot building and a parking area. The property has been used for retail purposes since the 1980s and is located in the County's Subregion 4 Planning District.[11]

---

241(e)(6). The Council may also take administrative notice of "any evidence contained in the record of any earlier phase of the approval process relating to all or a portion of the same property." PGCC § 27-131(f).

With or without a hearing, the District Council must make its own determination as to the merits of the application. Section 27-241(e)(7).

[11] The Commission is required to divide each county into local planning areas and to prepare area master plans for each planning area. LU § 21-105(b) and (c). Master plans "'govern a specific, smaller portion of the County and are often more detailed in their recommendations than the countywide General Plan as to that same area.'" *Maryland-Nat. Capital Park & Planning Comm'n v. Greater Baden-Aquasco Citizens Ass'n*, 412 Md. 73, 89 (2009) (quoting *Garner v. Archers Glen Partners*, 405 Md. 43, 48 n.5 (2008) (brackets

In 2005, the property was zoned as Commercial Shopping Center ("C-S-C"). Retail stores are a permitted use in C-S-C districts. On June 1, 2010, the District Council approved a new master plan for Subregion 4, and enacted a sectional map amendment, which changed the zoning classifications of certain properties within the subregion. One of the affected parcels was the property owned by Convenience & Dollar; it was reclassified from C-S-C to Residential-Townhouse ("R-T"). Retail stores are not permitted uses in the R-T district. Therefore, in order to continue to use its property for retail purposes, Convenience & Dollar Plus needed to obtain a nonconforming use certification.

In December 2012, and without the assistance of legal counsel, Convenience & Dollar filed an application for certification. In March 2013, the Planning Board staff reviewed the application. The staff found the documentary information submitted with the application to be scanty and inconsistent. Public records indicated that there had been a braid shop[12]

omitted)). The District Council must consider whether to direct the Commission to update each local planning area master plan on at least a sexennial basis. LU § 21-105(c)(1)(i). When this occurs, the Commission is required to review the existing master plan, make such amendments as it deems necessary, and may make recommendations for "zoning, the staging of development and public improvements[.]" LU § 21-105(c)(2).

Because area master plans include the Commission's recommendations for changes to the zoning classifications for individual parcels, the District Council typically enacts comprehensive re-zoning legislation, called "sectional map amendments," or "SMAs," on a subregional basis in conjunction with consideration and approval of updated area master plans for the region in question. *See* PGCC § 27-225.01.05.

[12] The Zoning Ordinance distinguishes between "barber and beauty shops" and "retail shops or stores"; but both are permitted uses in the C-S-C district. *See* PGCC § 27-461(b) (Table of Uses).

operating on the property for a time, and it wasn't clear to staff whether the braid shop was the exclusive use or whether the shop shared the space with a covenience store. The staff report to the Board stated that the business records submitted in support of the application did not clearly indicate that the retail use had been open without an interruption of 180 days or more since the rezoning occurred, and that the affidavits submitted "were contradictory." The report concluded:

> Perhaps additional evidence from the applicant to the Planning Board will be more persuasive. However, based on the evidence submitted, staff believes that the subject application should be recommended for DENIAL.

The Planning Board held a hearing on the application in March 2013. Convenience & Dollar, now represented by counsel, presented the testimony of Kevin White, the senior pastor of the New Life Christian Center, a church located about four blocks from the Convenience & Dollar property. Pastor White testified that he had been affiliated with the church for thirteen years, that the longest vacation that he took doing that period was for three days, that the Convenience & Dollar property had been used as a convenience store throughout that period, and that he frequently shopped there. In response to questions from Convenience & Dollar's counsel, Pastor White stated that there had also been a braid or beauty salon located on the premises between 2007 and 2009.

JoAnne Brown testified that she had been the manager of a restaurant located a few feet from the Convenience & Dollar property "for over 20 years." Like Reverend White, she testified that the Convenience & Dollar property had been continuously used as a convenience store and she had often shopped there. She also testified that there had been a

beauty or braid shop sharing the premises with the convenience store in the period from 2007 to 2009.

Malik Waleed, Convenience & Dollar's owner, also testified. He told the Board that the property has been used as a convenience store since he purchased it in 2005 and that, for a time from 2007 to 2009, he attempted to lease part of the space to a beauty/braid shop but this arrangement was never satisfactory. He testified that, throughout this period, the convenience store "never shut [its] doors," and the property has been a "full blown convenience store" since 2010.

Counsel asked for, and obtained, a continuance to supplement the record with additional financial and tax records.

The hearing resumed in June 2013. Ivy Thompson, a member of the Board's staff, addressed the Board and informed it that staff had reviewed the additional financial records and other documentation submitted by Convenience & Dollar's counsel. She stated that:

> Staff has come to the conclusion that the combination of [the original and supplemental] supporting evidence [and] the testimony from the previous Planning Board hearing has closed the 180 day gap noted in the original Staff Report, and therefore staff is recommending approval[.]"

Commissioners Washington and Geraldo expressed reservations about the probative weight of the documentary evidence. For example, they noted the absence of sales and use tax returns for the latter half of 2010. Convenience & Dollar's counsel acknowledged that the returns had not been filed but represented that Mr. Waleed's accountant was in the

process of preparing them. After further discussion, the Board members voted unanimously to approve the application. The Board's resolution stated in pertinent part:

> The submission of the additional documentation [at the June hearing][13] combined with the testimony heard during the [hearing] supports the applicant's claim that 4119 Southern Avenue has been in continuous use as a variety/retail store since the zoning changed from C-S-C to R-T on June 1, 2010. . . . While it remains unclear as to how much of the property was occupied by the convenience store, there is nothing in the Zoning Ordinance that indicates that a use must occupy 100 percent of the property. This supplemental information closes the 180-day gap.

The District Council elected to review the Planning Board's decision pursuant to PGCC § 27-244(e).

### 3. The Proceedings Before the District Council and the Circuit Court

The District Council conducted a hearing on the certification application on October 21, 2013. Consistent with the District Council's established practice, no new evidence was introduced. Although there is no transcript of the District Council's hearing in the extract, the speaker's list identifies Convenience & Dollar's counsel as the only person who addressed the Council. On January 14, 2014, the Council voted to deny the application. It issued a written decision on the same day. The District Council's decision stated in relevant part:

---

[13] The Board resolution stated that this documentation included a copy of a lease dated October 20, 2010, leasing the property for use as a convenience store; corporate sales tax returns; purchase order receipts for items such as ice cream and candy; and a calendar "detailing specific dates of previously submitted documents demonstrating continuous use and operation of a retail/variety store use at the subject property[.]"

We have reviewed the record supporting the application, including applicant's evidence in support of its application for certification, as well as the transcripts of hearing testimony offered at the March 21, 2013, and June 6, 2013, hearings before the Planning Board, in context with oral arguments from the parties on October 21, 2013. Based on our review of that record, we are not persuaded by the evidence because, in our view, the Applicant has not met its burden to show that the use has not ceased to operate for more than one hundred eighty (180) consecutive calendar days between the time the use became nonconforming, and the date when the application [was] submitted[.]

Absent from the record is documentary evidence, such as tax records, business records, public utility installation or payment records, and sworn affidavits, showing the commencing date **and continuous existence of the nonconforming use**. In fact, the District Council finds persuasive the record testimony of Commissioner Washington questioning the evidence supporting the application. We are not persuaded that purchase records for goods typically offered for sale at a convenience store are credible to show that these items were actually sold, especially without wholesale invoices to demonstrate those sales. Moreover, the District Council assigns considerable probative value to the testimony from the hearing by Commissioner Geraldo[14] highlighting gaps in the business and tax records submitted by Applicant, particularly the fact that there are no tax records for the six-month period of June 1, 2010 to January 1, 2011 to adequately demonstrate the continuous operation of the use.

(Emphasis in original; citations to record omitted.)

Convenience & Dollar filed a petition for judicial review. The circuit court reversed the decision of the District Council. The court concluded, as do we, that the District Council exercised appellate jurisdiction over the Planning Board's decision. The court remanded the case to the District Council for it to "review the Planning Board's decision regarding

---

[14] Neither Commissioner Washington nor Commissioner Geraldo testified at the Board hearing. As we have explained, they did express concerns about the absence of tax return information for the latter half of 2010. Nonetheless, both commissioners voted to grant the application.

Petitioner's request for certification of a nonconforming use to determine whether the Planning Board's decision . . . was arbitrary, capricious, discriminatory, or illegal."

The District Council has appealed the judgment and presents one issue, which we have reworded:

> Does the Prince George's County District Council exercise original, as opposed to appellate, jurisdiction when it reviews a decision of the Planning Board to grant or deny an application to certify a nonconforming use?

## 4. The Standard of Review

Our standard of review in cases of this nature is well-established:

> When we review the final decision of an administrative agency, such as the Board of Appeals, we look through the circuit court's and intermediate appellate court's decisions, although applying the same standards of review, and evaluate the decision of the agency. . . . The court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. In our review, we inquire whether the zoning body's determination was supported by such evidence as a reasonable mind might accept as adequate to support a conclusion.
> \* \* \*
> Generally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based upon an error of law.

*People's Counsel for Baltimore County v. Loyola College*, 406 Md. 54, 66–67 (2008) (quotations marks, citations, ellipses, and bracketing deleted).

## 5. The Proper Scope of the District Council's Review

The dispositive issue on appeal is whether the District Council exercises original jurisdiction when it reviews a decision of the Planning Board in a nonconforming use

certification proceeding. The agency that has such jurisdiction is authorized to make *de novo* fact finding with regard to the merits of a detailed site plan application. *Zimmer*, 444 Md. at 570. In *Zimmer*, the Court of Appeals held that the Planning Board has original jurisdiction to review and approve comprehensive design plans ("CDPs") and specific design plans ("SDPs"), and that the District Council review was limited to deciding whether the Planning Board's decision "is not authorized by law, is not supported by substantial evidence of record, or is arbitrary or capricious." *Id.* at 573.

The Court's analysis was primarily one of statutory interpretation. The Court began with LU § 20-202(b)(i),[15] which "provides that the county planning boards have 'exclusive jurisdiction' over 'local functions,' but does not detail each of the local functions." 444 Md. at 567. In the context of LU § 20-202 and LU § 20-207,[16] the Court observed (emphasis added):

---

[15] Section 20-202(b)(i) states:

> A county planning board has exclusive jurisdiction over:
> (i) local functions, including:[ ]
> 1. the administration of subdivision regulations;
> 2. the preparation and adoption of recommendations to the district council with respect to zoning map amendments; and
> 3. the assignment of street names and house numbers in the regional district[.]

[16] Section 20-207 states:

> (a) Subject to subsection (b) of this section, functions not specifically allocated in this subtitle shall be assigned to the Commission or to one or both of the county planning boards, as needed.

The Legislature did not itemize expressly or exhaustively each such intended function for apparent good reason.

The RDA makes particular provision for the local functions that the Legislature did not intend to be within the planning boards' exclusive jurisdiction. LU § 20–503(c) authorizes the District Council to refer for advice only some or all building permits to the Maryland–National Capital Park & Planning Commission for review and recommendation as to zoning compliance. LU § 22–208 requires referral to the county planning boards of applications for zoning map amendments for a "recommendation." Although unclear on its face as to the standard of review, LU § 25–210 authorizes, in Prince George's County, the District Council to "review" the "final decision" of the Planning Board, and issue a "final decision."

*CDP and SDP approvals were not among the local functions that the Legislature excepted from the planning boards' exclusive jurisdiction.* Because no alternative provision was made, *the RDA indicates to us that, like other unspecified local planning functions, the Planning Board is invested with exclusive original jurisdiction over the determination of CDPs and SDPs*, subject to appellate review by the District Council.

For the authority of the Planning Board to be "exclusive" or "original" with respect to the CDP and SDP approval processes, the Planning Board must be the *de novo* decision-maker regarding the merits of a CDP or an SDP. The District Council, if allowed to decide *de novo* whether a CDP or an SDP should be approved, violates the division of authority established by the RDA.

444 Md. at 569–70 (footnotes omitted).

---

(b) The assignments shall:
(1) be made by resolution of the Commission with the approval of the respective county council; and
(2) carry out the policy that local or intracounty planning functions should be performed by the county planning boards.

The Court also addressed the District Council's argument that it was authorized to exercise *de novo* review pursuant to a provision of the Prince George's County Zoning Ordinance—in effect, that the District Council could grant itself original jurisdiction. Initially, the Court observed that "[t]o the extent that the Charter, or the ordinances adopted thereunder, conflict with the RDA, the Charter and ordinances are invalid and the RDA governs." *Id.* at 526 n.30 (citing *Prince George's County v. Maryland–Nat'l Capital Park & Planning Commission*, 269 Md. 202, 223 (1973)). Later in its analysis, the Court considered PGCC § 27–132(f) (the same ordinance that the District Council relied upon for its assertion of *de novo* fact-finding authority in the present appeal):

> A provision of the county ordinance, such as PGCC § 27–132(f), that purports to give the District Council (or any other body) the authority to decide, de novo, a local function related to planning, zoning, subdivision, or the assignment of street names and house numbers, is invalid. *The District Council may not arrogate to itself original jurisdiction where the RDA places that responsibility elsewhere. Only the General Assembly, through amendment of the RDA, may accomplish that objective.*

444 Md. at 571 (emphasis added).

The Court concluded:

> A Planning Board decision is vulnerable if it is not authorized by law, is not supported by substantial evidence of record, or is arbitrary or capricious. When the standard of administrative appellate review used by the District Council mimics the standard of review that would be employed by the courts for the review of the same agency action, it is not interfering with the jurisdiction of the Planning Board. Employing a less deferential standard of review, however, would impinge on the original jurisdiction granted to the Planning Board by the RDA.

444 Md. at 573.

## 6. Analysis

Against this backdrop, Convenience & Dollar's argument to this Court is straightforward: it asserts that *Zimmer* stands for the proposition that LU § 20-202(a)(2)[17] assigns to the Planning Board original jurisdiction to decide zoning matters that are local in function, that nonconforming use certification applications are local matters, and that there is nothing in the RDA to suggest that the Legislature intended to divest the Planning Board of its authority in this area.

For its part, the District Council acknowledges that the RDA apportions land use regulatory authority between the District Council and the Planning Board, and that *Zimmer* teaches that the Planning Board has original jurisdiction over local zoning functions pursuant to LU § 20-202(a). Nor does the District Council take issue with the proposition that deciding a nonconforming certification application is a "local function" for purposes of LU § 22-202(b)(1).

---

[17] LU § 20-202 states in relevant part:

> (a)(1) Subject to paragraph (2) of this subsection, a county planning board:
> (i) is responsible for planning, subdivision, and zoning functions that are primarily local in scope; and
> (ii) shall exercise, within the scope of the county planning board's jurisdiction, the following powers:
>   1. planning;
>   2. zoning; [and]
>   3. subdivision;
> * * *

The District Council focuses on LU §§ 22-111–114, which address nonconforming uses in the Regional and Metropolitan District. It contends that, by enacting these statutes, the Legislature transferred original jurisdiction over nonconforming use determinations from the Planning Board to the Council itself. The District Council's argument is not convincing, for reasons that we will now explain.

The first problem with the District Council's argument is that three of the statutes upon which it relies, LU § 22-112,[18] LU § 22-113,[19]and LU § 22-114,[20] have nothing to do with

---

[18] LU § 22-112:

> (a) This section applies to any official or body authorized to issue a license or permit.
> (b)(1) In this subsection, "residential zone" means any area in the regional district that is designated on a zoning map as residential.
> (2) Except as provided in paragraph (3) of this subsection, an official or body may not issue a license or permit for a commercial or industrial purpose or to conduct any commercial or industrial enterprise or business in a residential zone.
> (3) Paragraph (2) of this subsection does not apply if the purpose, enterprise, or business is allowed by an applicable zoning law under allowed uses or special exceptions granted by a board of appeals.

[19] LU § 22-113:

> A person may continue, and appropriate licenses may be issued to the person for, a lawful nonconforming use existing on the effective date of the respective zoning laws in the metropolitan district.

[20] LU § 22-114:

> A lawful nonconforming use that existed on the effective date of a zoning law enacted by Montgomery County or Prince George's County under this title in that portion of the regional district in the applicable county that is outside the metropolitan district may be continued and appropriate licenses may be issued.

the allocation of responsibilities between the Planning Board and the District Council. Section 22-112 prohibits nonconforming commercial and industrial uses in residential zoning districts within the Regional District unless the "business is allowed by an applicable zoning law under allowed uses or special exceptions granted by a board of appeals." Section 22-113 provides that the lawful nonconforming uses may continue to operate within in the Metropolitan District. Section 22-114 establishes the same rule to those parts of the Regional District that are not included in the Metropolitan District.[21] None of these statutes address, either explicitly or by implication, whether the District Council or the Planning Board has original jurisdiction in matters involving nonconforming uses. We now turn to the remaining provision of the Land Use Article upon which the Council relies.

LU § 22-111 states (emphasis added):

> (a) This section does not authorize the validation, ratification, or legalization of any violation of law or regulation in effect at the time of the action by the district council under this section.

> (b) In accordance with its zoning laws, the district council *may* provide for the grant of power to the Board of Appeals of Prince George's County on appeal to allow:

> (1) an *extension* of a lawful nonconforming use throughout all or a part of a building in which the nonconforming use lawfully exists;

> (2) the *restoration or reconstruction* of an existing lawful nonconforming use if by fire or other calamity the use has been destroyed to the extent of not more than 75% of the reconstruction value of the building in which the lawful nonconforming use was carried on; or

---

[21] *See* n. 1, *supra,* for an explanation of the distinction between the Regional and Metropolitan Districts.

(3) an *extension* of an existing lawful nonconforming use on the same lot as the lot existed as a single lot under single ownership when enactment of the zoning law made the then existing use on the lot nonconforming.

Section 22-111 pertains to the extension or the restoration of nonconforming uses; it does not address the process by which it is decided whether a nonconforming use should be certified in the first instance. Thus, by its terms, it does not apply to the administrative decision-making process at issue this case. Moreover, LU § 22-111 is of no avail to the District Council because it has not "provide[d] for the grant of power to the Board of Appeals of Prince George's County" to consider nonconforming use certification cases. As the District Council states in its brief (emphasis in original):

> Consequently, as directly authorized by the RDA, the District Council adopted local nonconforming use regulations within its Zoning Ordinance, being also Subtitle 27 of the Prince George's County Code. However, the District Council, in enacting local laws governing the certification of nonconforming uses, *did not* delegate its jurisdiction to the Board of Appeals. PGCC § 27-229.[22]

---

[22] PGCC § 27-229 sets out the powers of the County Board of Appeals. It states in relevant part:

> (a) The Board of Zoning Appeals (known in this Division as the "Board") shall have the following powers and duties:
> (1) To hear and decide appeals involving variances from the strict application of this Subtitle (commonly known and referred to in this Division as variances);
> (2) To hear and decide appeals where it is alleged that, in the administration of this Subtitle, there is error in the refusal of a building or use and occupancy permit, or in any other decision of the Department of Permitting, Inspections, and Enforcement, the Planning Board, or any other person or body authorized to administer this Subtitle;
> * * *

- 26 -

Assuming, solely for purposes of analysis, that LU § 22-111 authorizes the District Council to transfer initial responsibility to decide nonconforming use certification applications from the Planning Board to the Board of Appeals, the fact remains that the District Council has not taken that step. Thus, LU § 22-111 does not support the District Council's position that it has original jurisdiction in nonconforming use certification applications.

A nonconforming use certification application should be granted if the applicant proves: (1) when the nonconforming use began; (2) that, subject to certain exceptions, the use has continued without an interruption of more than 180 days; and (3) that there are no local code violations pending against the property other than its failure to have a use and occupancy permit. *See* PGCC § 27-244(b) and (d). All of these inquiries are limited to the parcel in question, and are quintessentially local in nature. We hold that deciding a nonconforming use certification application is a local zoning function, and that the Planning Board has original jurisdiction over such applications pursuant to LU § 20-202(b)(i).

Because the District Council did not have original jurisdiction in this case, it could reverse the decision of the Planning Board only if the Board's decision was "not authorized by law, is not supported by substantial evidence of record, or is arbitrary or capricious." *Zimmer,* 444 Md. at 573. The Court equated this standard with the standard that courts apply in judicial review proceedings. *Id.* at 573–74.

There is nothing in the District Council's decision to suggest that the Council viewed the Planning Board's decision as arbitrary, capricious, flawed by a misunderstanding of law, or not supported by substantial evidence. Instead, the District Council conducted its

own review of the evidence, weighed that evidence differently than did the Board, and concluded that it was not persuaded that the nonconforming retail use should be certified. In so doing, the District Council exceeded the proper scope of its review in cases in which the Planning Board has original jurisdiction. *See, e.g., People's Counsel for Baltimore County v. Surina,* 400 Md. 662, 681 (2007) ("The heart of the fact-finding process often is the drawing of inferences made from the evidence. . . . The court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness[.]" (Citations and quotation marks omitted; ellipsis in original.)). We conclude, as did the circuit court, that the District Council erred when it reversed the Planning Board's decision in this case.

## 7. The Appropriate Appellate Relief

The circuit court reversed and remanded this case to the District Council for it to review the Planning Board's decision in light of the court's conclusion that the Council exercised appellate, and not original, jurisdiction in the matter. The court's judgment was issued before the Court of Appeals filed its opinion in the *Zimmer* case. With the benefit of that opinion, we conclude that it is not necessary to remand this case to the District Council for further deliberations.

As a general rule, when courts decide that an administrative agency's decision is based upon an error of law, they remand the case to the agency for it to reconsider the matter in light of the court's explanation of the applicable legal standard. *See, e.g., Board of Public*

*Works v. K. Hovnanian's Four Seasons at Kent Island, LLC,* 425 Md. 482, 522 (2012).

However, as the Court observed in *Zimmer,* a remand is not necessary if "'there is no administrative function that remains to be performed.'" 444 Md. at 581 (quoting *Anne Arundel County. v. Halle Development, Inc*., 408 Md. 539, 557 (2009)).

Returning to the case before us, the sole basis of the District Council's decision was that, after its own *de novo* review of the evidence, it reached a different conclusion than did the Board. The District Council's use of an incorrect standard of review is a legal error that would normally warrant a remand to that body. However, the Council has never taken the position that the Planning Board's decision was flawed by legal error, or was otherwise arbitrary or capricious. It is manifest that the Planning Board's decision was supported by substantial evidence, as that concept has been defined in *Surina* and other cases. The District Council does not contend otherwise to this Court.

We conclude, as did the Court of Appeals in *Zimmer*, that remanding the case to the District Council for additional deliberations "would be futile because there is only one action the District Council could take," namely, to affirm the Planning Board's decision. 444 Md. at 582.

In summary, we agree with the circuit court that the District Council exercises appellate, and not original, jurisdiction, when it reviews Planning Board decisions in applications for nonconforming use certifications. However, with the benefit of the Court of Appeals' analysis in *Zimmer,* we conclude that a remand to the District Council is unnecessary. Therefore, we affirm the judgment of the circuit court in part, vacate it part, and remand

this case so that the court can enter a judgment ordering the District Council to affirm the

decision of the Planning Board.

**THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED IN PART AND VACATED IN PART. THE CASE IS REMANDED TO THE CIRCUIT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLANT TO PAY COSTS.**